## COMMONWEALTH *vs.* ADOLPHUS PORTER & others.

The *St.* of 1849, *c.* 59, entitled "An act to prevent disturbances of schools and public meetings," and providing for the punishment of "every person who shall wilfully interrupt or disturb any school or other assembly of people, met for a lawful purpose," includes meetings assembled for the discussion of the subject of temperance; and also, *it seems,* political gatherings, meetings for amusement, and all public meetings held for lawful purposes.

SHAW, C. J.    The three defendants were indicted for wilfully disturbing and interrupting an assembly of people, met for a lawful purpose in a meeting-house in Orange, by coughing, laughing, whistling, and talking in a loud and boisterous manner, within said meeting-house.    A second count charges the same offence, with the further averment that the said meeting was held for the purpose of discussing the subject of temperance. Two of the defendants were convicted and one acquitted.

The defendants, before trial, moved the court of common pleas to quash the indictment, because no crime was alleged; this motion being overruled, a trial was had with the result above stated, and a motion in arrest of judgment was made by those convicted, for the same reason, which was also overruled, and to that decision the defendants except.    The question is, whether this indictment sets forth any offence punishable by law.

The statute, on which the indictment is founded, is *St.* 1849, *c.* 59.    It is very short, and is in these words : " Every person who shall wilfully interrupt or disturb any school or other assembly of people met for a lawful purpose, within the place of such meeting, or out of it, shall be punished by imprisonment in the county jail not more than thirty days, or by fine not exceeding fifty dollars."    The title of the act is "An act to prevent disturbances of schools and public meetings."

We concur with the learned counsel for the defendants, that the construction to be given to this statute becomes very important.    So numerous are the public meetings of persons in this commonwealth, and so various the purposes for which they are held, that the peace, harmony and good order of society

Commonwealth *v.* Porter & others.

depend much upon the orderly conduct of all such meetings
That this statute is intended to extend beyond schools, is very
clear; shall the maxim *noscitur a sociis* limit it to places of
instruction, such as academies, classes in colleges, lyceums and
institutes, and the like ?   That it does extend to them we think
quite clear; but is it limited to them ?   These would hardly be
sufficient to satisfy the other branch of the statute, " assembly
of people," especially if any force is given to the title, " to pre-
vent disturbances of schools and public meetings."   We are
aware that not much influence is allowed to the title in the
exposition of a statute; yet when statutes are so very concise,
the title, being passed upon as part of the statute, may have
some slight influence.   The coupling of the words " school "
and " assembly of people " together, in this act, can have little
effect in limiting the latter words.

The defendants contend, that this clause applies only to
meetings which are required by law, as schools are, as for
example, town meetings, parish meetings, school district meet-
ings, which are made necessary by law, for the exercise of the
legal rights and duties of citizens.   And this excellent reason
is suggested, that the law, imposing the duty, will protect the
citizen in exercising that duty.

May not this reasoning, so well stated, be extended a little
further, to this effect; that wherever the law has authorized
people to meet together peaceably for a lawful purpose, for
any useful, beneficial and laudable object, it is a valuable right
conferred on the citizens, and the law will protect them in the
exercise of that right.

This is recognized as a valuable right secured to the people
by the constitution.   Declaration of Rights, art. 19.   " The
people have a right, in an orderly and peaceable manner, to
assemble to consult upon the common good; give instructions
to their representatives; and to request of the legislative body,
by the way of addresses, petitions or remonstrances, redress of
the wrongs done them, and of the grievances they suffer."

This, like the similar declarations of other rights, essential to
a free government, is expressed in general terms; but it not only

gives authority to the legislature, but makes it their bounden duty, to make suitable laws from time to time, as the exigencies of the times may require, for the protection and enjoyment of such rights.

If the public meeting of citizens for lawful purposes is an essential and valuable right, and this law goes no further than to give practical efficacy and security to it, by a moderate punishment for its disturbance, we can perceive no good reason why the law should not be made to be coëxtensive with the right to be secured, and applied, according to its plain terms, to the wilful disturbance of all public meetings held for lawful purposes.

We are asked, as if the question could not admit of an affirmative answer, whether this law shall extend to all the noisy political gatherings of the times. We should hope and believe, that such gatherings would be less noisy, and more decent and orderly and useful, if it is well understood that they cannot be wilfully interrupted. But the question admits of and requires a more serious answer. The article in the Declaration of Rights, already cited, declares the right of the people, in an orderly and peaceable manner, to assemble to consult upon the common good. Nothing more concerns the public good, than the election of good men, in all respects qualified, to public offices. The extended and almost unlimited rights of suffrage, secured to the people of this commonwealth by the constitution and laws, assume and are founded on the right of voters, to have the fullest and freest discussion and consultation upon the merits and qualifications of candidates, for their information and the means of exercising a sound and enlightened judgment in regard to public men and political measures. Such discussions, through the medium of the press, though they might be otherwise libellous, are justified, on this consideration, as privileged communications. *Commonwealth* v. *Clap*, 4 Mass. 163. Why should not the orderly and peaceable meetings of voters, for deliberation and mutual information, on like subjects and for similar purposes, be under the protection of the law, although they are political gatherings ?

Commonwealth *v.* Porter & others.

It is argued that such a literal construction of the statute would extend its operation to meetings of parties for amuse-ment. We are strongly inclined to think that this conclusion is correct; but if it be so, we can perceive in it no objection to the wisdom and fitness of the statute on that account. Take the case of dramatic and musical exhibitions for instance, sanc-tioned by law, placed to some extent under the vigilant guardian-ship of municipal authorities, and by them duly licensed. Capitalists are encouraged to invest their property in the erection of buildings, to enlist persons of talent and genius of the highest order, to produce exhibitions well adapted, in the opinion of many enlightened persons, to refine the taste of the people, and to inspire generous sentiments among the people. Visitors and auditors are encouraged to pay their money for admission, to a scene of enjoyment, if not improvement, which, whatever other judgment may be formed of it, all will agree, is a lawful assembly. Shall not proprietors, authors, composers, artists, visitors and all other persons interested, be protected in their rights, against wilful disturbance, by the operation of that law, which gives them their rights? And yet those rights can only be preserved by maintaining such meetings from wilful inter-ruption and disturbance, so that the performances may be witnessed, heard and enjoyed. Being expressly opened to the public, every person purchasing a ticket has a right to enter; he cannot be excluded by the proprietors on the ground of their right of property in the building, because his ticket is a license; and yet a few ill-disposed persons, thus abusing their license, by tin horns, cracked kettles, and other loud and discordant sounds, as well as by vociferation, might destroy the effect of the most pathetic tragedy, or the sublimest oratorio. Our con-stitution has made it the duty of legislatures and magistrates, in all future periods of this commonwealth, to cherish the interests of literature, to encourage private societies and public institutions for the promotion of the arts, to countenance and inculcate the principles of humanity, sincerity, good humor, and all social affections and generous sentiments among the people. Constitution, *c.* 5, § 2.

All assemblies, therefore, designed and properly adapted to accomplish these high and generous purposes, whether in the form of deliberative bodies, lectures, or even those characterized as meetings for amusements, if warranted by law, seem thus to be sanctioned and encouraged by the admirable passage in the constitution, of which the foregoing is an abstract.

What shall constitute an interruption and disturbance of a public meeting or assembly, cannot easily be brought within a definition, applicable to all cases; it must depend somewhat on the nature and character of each particular kind of meeting and the purposes for which it is held, and much also on the usage and practice governing such meetings. As the law has not defined what shall be deemed an interruption and disturbance, it must be decided as a question of fact in each particular case; and although it may not be easy to define it beforehand, there is commonly no great difficulty in ascertaining what is a wilful disturbance in a given case. It must be wilful and designed, an act not done through accident or mistake.

It was urged that the legislature could not have so understood this statute, because two years after they passed an act to prevent disturbances at funerals, which would have been unnecessary, under the construction proposed to be given to this act. *St.* 1851, *c.* 193. But it is to be considered, that the legislature often pass an act directed to some particular abuse, *ex majori cautela*, although there may be some prior statute in force, or some rule of the common law, which might reach it. Besides; it is manifest that the latter act, prohibiting the disturbance of a funeral assembly or procession, by fast driving or otherwise, rather looks to a decent respect for the formation or movement of a funeral procession, in a street or highway, than a meeting formed for deliberation or consultation; and therefore the former statute might not reach the precise abuse, intended to be prohibited by the latter.

So of the rule of the common law, in regard to riot; it must be committed by three persons at least, and has its own technical rules, and therefore is not fully and precisely adapted to reach the specific and numerous cases contemplated by this statute.

Our remarks on the construction of this statute, induced perhaps by the able argument for the defendants, have extended beyond what might be considered necessary to the decision of the present case, and must be estimated accordingly. The present case is that of a meeting of citizens assembled in the meeting-house for the discussion of the subject of temperance. This is a subject of great public interest, and has, we know, attracted the earnest attention of the people of this commonwealth, especially with a view to legislative action. For aught that appears, this was a meeting of people, and a discussion of the subject of temperance, which actually resulted in a petition or remonstrance to the legislature, with a view to ameliorate or alter, or to retain and confirm, the existing law upon the subject of temperance, and, as such, a meeting held in strict conformity to the right secured by the constitution. The court are therefore of opinion that the direction of the judge at the trial was right, that the indictment did state an offence punishable by law, and that the motion in arrest of judgment on that ground was rightly overruled. *Exceptions overruled.*

*D. Aiken,* for the defendants.

*J. H. Clifford,* (Attorney General,) for the Commonwealth.