ALPHEUS GADDIS V. STATE OF NEBRASKA.

FILED DECEMBER 4, 1920.   No. 21578.

1. **Disturbing Religious Meeting.** Without violating the statute forbidding the disturbance of a religious meeting, a member of a church, if permitted by its precepts and usages, may, in a becoming manner with good motives, interrupt a minister in the midst of a sermon to correct an utterance at variance with the established tenets or rites of such church.

2. ————: INSUFFICIENCY OF EVIDENCE. Conviction for disturbing a religious meeting *held* not sustained by the evidence.

ERROR to the district court for Furnas county: CHARLES E. ELDRED, JUDGE. *Reversed and dismissed.*

*Frank J. Munday* and *J. F. Fults,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *J. B. Barnes,* contra.

Rose, J.

In the district court for Furnas county Alpheus Gaddis, defendant, was convicted under the accusation that on November 9, 1919, he did "unlawfully interrupt and molest a certain religious society, to wit, the Christian Church of Beaver City, Nebraska, and the members thereof, while said members were met together for the purpose of worship." Rev. St. 1913, sec. 8754. For that misdemeanor defendant was sentenced to pay a fine of $15 and costs of prosecution, taxed at $23.30. As plaintiff in error he presents for review the record of his trial.

The principal assignment of error is the insufficiency of the evidence to sustain the conviction. Under this head it is argued that there was an utter failure to prove that defendant violated any statute of the state or any rite, discipline, rule or usage of the church society, or that he unlawfully interrupted or molested the religious meeting or any member of the congregation, or that he acted in an improper or disorderly manner. In this connection it is further argued that interruption of a religious service is justified, if it results from the exercise of a lawful right becomingly asserted.

Apparently relying on the right to charge the offense in the language of the statute, the prosecutor did not mention in the information any specific act or acts constituting a misdemeanor. What defendant did, if anything, to justify his conviction must therefore be found alone in the testimony of witnesses. In describing what was said and done the witnesses were not entirely harmonious, but the material facts are not in dispute. Defendant was a charter member of the Christian Church of Beaver City, a religious society which had been in existence for 30 years. For Bible school, preaching and communion the congregation convened Sunday morning, November 9, 1919. The minister's text was the Lord's Supper or the Communion. In the midst of the sermon the minister said, in substance, that the deacons in conducting communion services had a right to pass a member whom they believed to be un-

Gaddis v. State.

worthy. At this point defendant arose from his pew and interrupted the discourse. Some of the expressions directed to the minister by defendant, as recollected by witnesses, may be paraphrased as follows: "You are preaching wrong." "You have gone too far." "You are touching on a matter between the communicant and God Himself." Defendant's own version of what he said to the minister is: "You have no authority for what you are saying. You have already said too much." After interrupting and correcting the minister, defendant, without leaving his place, turned his back to the pulpit, asked permission to speak, and addressed the congregation, saying, among other things, in respect to communion, that no one had a right to judge another, and referring to the following passages from the Scriptures:

"But let a man examine himself, and so let him eat of that bread, and drink of that cup.

"For he that eateth and drinketh unworthily, eateth and drinketh damnation to himself." 1 Cor. 11: 28, 29.

In speaking, defendant made no gestures. His appearance indicated sincerity. He talked a good deal like the minister, who remained standing during the interruption, afterward offered a prayer, finished his sermon, and dismissed the congregation. There is some evidence of a commotion in the meantime, during which at least two persons left the building. When defendant asked permission to address the congregation, no audible objection was made. During his remarks, however, the choir, it seems, voiced a protest by an impromptu musical service. It is manifest from undisputed evidence that defendant interrupted a religious meeting, but it is not every interruption that constitutes a violation of law. Without violating the statute forbidding the interruption of a religious meeting, members of the society may repel a lawless invasion either from without or from within. Under the same principle a member of a religious society, if permitted by its precepts and usages, may, in a becoming manner with good motives, interrupt a minister to correct utterances at

105 Neb.—20

variance with established tenets or rites. Otherwise freedom of worship and free speech might be impaired by bigotry and false doctrines. The proper and orderly exercise of these rights, though resulting in a commotion during a religious meeting, is not punishable in a criminal court. Defendant no doubt reasoned in his own mind that silence on his part would imply his consent to a discipline depriving his brethren, without accusation or hearing, of the sacred right of communion on the mere belief of deacons that the brethren were unworthy. Under such circumstances he had a right to speak, even in the midst of a sermon, unless he had by some means committed himself to silence. He was a part of the religious society and as such was entitled, like other members, to its privileges and rites. The undisputed evidence shows that the utterance of the minister, when interrupted, was contrary to the doctrines of his church, and that defendant as a member thereof was within his rights in interrupting the meeting to correct the mistake. There is no evidence that defendant in exercising the privilege of interruption violated any established rule, usage, doctrine or rite of the Christian Church of Beaver City. For want of such proof the prosecution fails. The judgment of the district court is therefore reversed and the prosecution dismissed.

REVERSED AND DISMISSED.

MORRISSEY, C. J., not sitting.