STATE OF NEBRASKA, APPELLEE, V. RUDOLPH E. McNAIR, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. KELSEY JONES, APPELLANT.

135 N. W. 2d 463

Filed May 28, 1965. Nos. 35801, 35802.

Thomas D. Carey and Wilbur L. Phillips, for appellants.

Herbert M. Fitle, Edward M. Stein, Walter J. Matejka, Charles A. Fryzek, and Allen L. Morrow, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

The appellants were found guilty after a jury trial of the violation of a city ordinance of the city of Omaha, classified as disturbing an assemblage. The ordinance, No. 25.33.010, is as follows: "Loud and Indecent behavior unlawful. It shall be unlawful for any person to disturb any lawful assemblage of people or to disturb any congregation or assembly where religious worship is being held by making any noise or by loud or indecent behavior." Appellants have perfected an appeal to this court.

The city council of the city of Omaha, hereinafter referred to as council, started a regularly scheduled meeting at approximately 2 o'clock p. m. on Tuesday, October 22, 1963. The business of the council proceeded in regular order as it appeared on a prepared agenda from that time until approximately 2:37 p. m., when its proceedings were interrupted by the singing of the National Anthem. At that time the council was listening to the presentation of a lawyer on a zoning question for a client. The appellants, together with some 47 others who were sitting together in the city council chamber, at 2:37 p. m. stood up and began singing "The Star Spangled Banner." After they had completed singing the National Anthem, they began marching around the council chamber, singing "We Shall Overcome," which one of the appellants identified as the unofficial hymn of the Civil Rights Movement. The president of the council called for order and rapped his gavel several times to no avail. The appellants were then informed by a lieutenant of the Omaha police department, who was in charge of a police detail at the council chamber, that they were disturbing the council proceedings and would have to stop. When they continued singing and marching, he placed them under arrest.

The appellants are both ordained clergymen. On October 8, 1963, they had both appeared and spoken before the city council on the urgency and the need for a fair housing ordinance. On that occasion the council had before it a proposed ordinance which appellants were attempting to induce the council to introduce. Appellant Jones admitted that on October 8, 1963, he told the council that appellants would, if necessary, go to extremes within their constitutional rights to make their needs and urgencies known, and if need be would climb on the tables, under the tables, and would sit in the laps of the council members.

Appellant Jones admitted that he and appellant McNair, when they reached the council chamber on October 22, 1963, synchronized their watches with the clock in the chamber so that they could start the singing at the same time. Both of the appellants in effect testified that they had consulted their consciences and their training in moral behavior, and it was not possible for them to have done otherwise than they did on this occasion. Both of them admitted they knew that the matter in which they were interested was not on the council agenda on October 22, 1963. They were both familiar with the council procedure and knew that the council followed a prepared agenda, although it was possible for the council, upon request and with unanimous consent, to consider a matter not on the agenda. On this occasion, they made no attempt to obtain the consent of the council to place their matter on the agenda. They infer that they were prevented from doing so, but there is nothing in the record which gives the slightest indication that they made any attempt to have their matter considered on this occasion.

Did the acts of the defendants disturb the council proceedings? There is no question but that they did and that their actions were planned to do just that. The council was unable to continue with any business until the appellants and their group were removed from the

council chamber. This removal was effected by the police, who had been alerted for such contingency. Appellants claim the verdict is not supported by the evidence. There is no merit to this contention. The evidence is substantial and fully adequate. It would have been a miscarriage of justice to have returned any other verdict on the evidence adduced.

The offense of disturbing a public meeting was recognized by the common law as a misdemeanor. Certain like provisions have been enacted into our statutes. The ordinance in question is a general regulation for all types of meetings. What constitutes a disturbance of a lawful assembly is not susceptible to specific definition, but must depend to some extent upon the nature and the character of the particular assemblage. However, while it may be difficult to specifically define beforehand, there is no problem in determining what constitutes a disturbance in a given case. In the instance of a city council, we hold that any conduct contrary to the normal presensation of business which disturbs or interrupts the orderly progress of the proceeding is a disturbance.

Webster's New International Dictionary (2d ed.), p. 757, defines the word "disturb" as follows: "To throw into disorder or confusion; to interrupt the settled state of."

In People v. Malone, 141 N. Y. S. 149, 156 App. Div. 10, "to disturb" is defined: "To throw into disorder; to move from a state of rest or regular order; to interrupt; to throw out of course or order." See, also, Commonwealth v. Porter, 67 Mass. (1 Gray) 476.

In State v. Mancini, 91 Vt. 507, 101 A. 581, the Supreme Court of Vermont, on the question of the disturbance of a public assembly (in that case a public dance) quoting from 2 Bishop, Criminal Law, § 309, said: "Speaking generally, the rule applicable to disturbances of public assemblies is that any conduct which, being contrary to the usages of the particular sort of meeting and class of persons assembled, interferes with its due progress, or

is annoying to the assembly in whole or in part, is a disturbance." See, also, State v. Stuth, 11 Wash. 423, 39 P. 665.

Appellants seem to contend that because the rules of the city council make the city clerk the sergeant-at-arms, they were not subject to arrest until she or the presiding officer asked them to stop. The evidence is undisputed that the presiding officer attempted to stop the disturbance with his gavel. The police were there for a purpose. That purpose could only have been to see that the council proceedings were not interrupted. They were requested by the officer in charge to stop, and they ignored his request. This argument is so absurd under the facts in this case that it needs no further discussion herein.

Appellants cite Nelson v. State, 33 Neb. 528, 50 N. W. 679, and infer that the officer had no right to make an arrest without a warrant. We suggest the case is no authority for appellants' inference. What the case does say is: "The rule of criminal law is settled that an officer without warrant acts as an individual without police authority *unless* he witnesses the criminal act; * * *." (Emphasis supplied.)

Appellants cite but do not argue the applicability of Gaddis v. State, 105 Neb. 303, 180 N. W. 590, 12 A. L. R. 648. This case involved a prosecution under what is now section 28-801, R. R. S. 1943, involving the disturbance of a religious meeting. There is no analogy between the facts of that case and those herein. That case holds a member of the church, if permitted by its precepts and usage, may in a becoming manner with good motives interrupt a minister in the midst of a sermon to correct an utterance at variance with the established tenets or rites of the church. Here the appellants interrupted a presentation in which they had no interest, and deprived another of his right to petition for a redress of his grievance. They insist on their right

to petition, but by their conduct prevented someone else from doing so.

On the theory that custom and usage prevail to determine what constitutes a disturbance, appellants complain that the State did not prove that the rules of the city council forbade them to sing or to march in the council chamber. It is not necessary to prove the self-evident. It should be obvious that the business of a city council could not be conducted in an orderly manner if everyone who felt so moved had a right to interrupt the business at hand by singing and marching around the council chamber. We note, however, that the evidence is undisputed that there had never been any singing or marching in the council chamber on any previous occasion. This certainly would negative any claim of usage and custom in the absence of proof otherwise.

Appellants contend the demonstrating is petitioning within the First Amendment to the United States Constitution, and that as citizens they had the right at any time to petition the council for a redress of their grievance. They do have a right to petition, but that right is not absolute. There is a time and a place for everything. Appellants' rights must be considered in conjunction with the rights of their neighbors. If we are to have a government of law and not of men, no one has a right to disrupt orderly proceedings because he cannot have his way. The laws apply to the appellants as well as to their neighbors. If their consciences and training in moral behavior do not make them realize the merits of their goal does not give them the right to take the law into their own hands, then they need restraining because their actions will in the long run imperil the very freedom they seek. If everyone who wanted to coerce the city council could disrupt the council proceedings whenever, to accomplish their purpose, they felt moved to do so, the business of the city would stagnate. The council would become a mere rubber stamp for the mob.

Our constitutional safeguards are intended to protect against the very thing appellants attempt to do.

There is no question here of the denial of appellants' right to be heard. The appellants as citizens of Omaha had a right to be heard on their grievance. Appellants knew how to obtain that right and had exercised it on October 8, 1963, but because the council had not seen fit to honor their request, they attempted to coerce it to do something it apparently did not wish to do. The appellants not only disturbed the meeting, but they did so intentionally. The precise manner in which their maneuver was executed indicates that the appellants agreed on a planned course of action before they came to the meeting, and they carried out that plan. That plan obviously was to disrupt the council proceedings until they secured a commitment from the council, or forced the council to adjourn.

The only logical inference which can be drawn from appellants' conduct is that they were carrying out the threat made by appellant Jones on October 8, 1963. What the appellants did cannot be condoned. They cannot hide behind a patriotic song or a hymn, religious or otherwise, to take the law into their own hands to achieve their ultimate objective, regardless of the merits of that objective. If the law should wink at their conduct or hold that any right they might have must be preferred over the rights of their neighbors, we have no law. We have abdicated to the whim and caprice of the irresponsible enthusiasts. They virtually are elevated above the law. To do so is to take a step backward in the march of freedom, to return to anarchy or tyranny. This cannot be if we expect to preserve our individual freedoms. To depart from the rule of law is to return to the law of the jungle.

We find no merit in any of the appellants' assignments of error. The judgment of the trial court should be and hereby is affirmed.

AFFIRMED.