**SOUTHEASTERN PROMOTIONS, LTD.,**
Plaintiff-Appellant,

v.

**CITY OF WEST PALM BEACH et al.,**
Defendants-Appellees.

No. 71-3220.

United States Court of Appeals,
Fifth Circuit.

March 22, 1972.

Rehearing Denied April 12, 1972.

Oth Miller, Amarillo, Tex., Henry P. Monaghan, Boston, Mass., Ronald Sales, Palm Beach, Fla., Gerald A. Berlin, Boston, Mass., for plaintiff-appellant.

Walton, Lantaff, Schroeder, Carson & Wahl, James Knight, James W. Vance, Farish & Farish, West Palm Beach, Fla., for Boyes.

Thomas F. Choyce, Associate City Atty., Henry L. Bowden, Atlanta, Ga., amici curiae.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a classic case involving the principle that our government is one of laws and not of men. The City of West Palm Beach, Florida, acting through a duly authorized official, refused a license to the promoter of the musical "Hair" to display the production in a municipal auditorium on the basis that the musical does not constitute "family entertainment." Finding that subjective authoritarianism in the denial of First Amendment rights is constitutionally intolerable, we conclude that the dictate of the auditorium manager in this case cannot withstand the mildest breeze emanating from the Constitution.

In 1966 the defendant City of West Palm Beach, Florida, constructed a municipal auditorium and by ordinance granted supervisory and management authority of the new facility to the city commission. To manage the auditorium the city commission hired the defendant Ralph J. Boyes, Jr. To assist the city commission in the management of the defendant city's various municipal facilities an Auditorium Advisory Board was established, which from time to time advised the city commission concerning the management of the auditorium. While the advisory board and the commission were charged with the duty of overseeing the operation of the auditorium, it is undisputed that both organizations accorded the defendant Boyes a free hand in operating the facility. Charged with the responsibility of planning and scheduling programs for the auditorium, defendant Boyes decided that the facility would be open to any divertisement which could be considered "family entertainment." Thus, since opening day in 1966, the municipal auditorium of the City of West Palm has staged an assortment of family entertainment, including circuses, professional and amateur sports, theatricals, and operas.

In 1971, the plaintiff, Southeastern Promotions, Ltd., approached the defendant Boyes and sought permission to rent the auditorium for the purpose of showing the musical "Hair." Without

having seen the musical or even reading the script, Boyes refused to license the auditorium to the plaintiff for the sole reason that in his judgment the production was not family-type entertainment.[1] The promoter then appealed Boyes' decision to the advisory board, which unanimously approved the manager's denial of a license.

Pursuant to 28 U.S.C.A. § 1343(3) and (4),[2] the plaintiff instituted this action in federal district court against Boyes and the City of West Palm Beach, claiming deprivation of rights secured by the First and Fourteenth Amendments of the Constitution of the United States. Plaintiff specifically requested the court (1) to declare the actions of the defendants unconstitutional, (2) to enter an order enjoining the defendants from censoring or otherwise interfering in any way with the booking and presentation of "Hair," and (3) to enjoin the defendants from refusing to reserve and contract with plaintiff for the use of the city auditorium during the spring of 1972. After holding an evidentiary hearing, the district court dismissed the plaintiff's complaint, concluding that the rental of the city's auditorium was a matter to be left solely to the unfettered judgment of the defendants. The plaintiff, of course, appealed this decision. Concluding that the banning of "Hair" has neither First Amendment rhyme nor Fourteenth Amendment reason, we reverse the judgment of the trial court.

■ It is settled law that theatrical productions can be staged under the protective cupola of the First Amendment.

*See* Schacht v. United States, 1970, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44. The court below concluded that "Hair" did not enjoy First Amendment privileges for essentially two reasons. First, the district court determined that the plaintiff had failed to show that it possessed any right to use the city's auditorium, and second, the trial court decided that "a city has the freedom to exercise business judgment in choosing the programs to be presented in a municipal auditorium that has been built for the purpose of providing entertainment for all members of the community." In other words, the district judge concluded (1) that the defendant city operated its municipal auditorium outside the limitations imposed by the First and Fourteenth Amendments, and (2) that even if the City of West Palm Beach were subject to the strictures of those constitutional guarantees the municipality's particular mode of operation was not constitutionally offensive. Without addressing ourselves to the absolutism of free expression, we have no hesitancy in proclaiming that the defendant Boyes' denial of the showing of "Hair" invoked such a sieve upon the protective penumbra of the First Amendment that cloture in this case has trespassed constitutional boundaries and made a mockery of that Amendment's benign embraces.

■■ We first turn our attention to the issue of whether or not the defendant city, and its operation of the auditorium, is subject to the limitations of the First Amendment. As noted above, this municipal facility was constructed by the citizens of West Palm Beach and

---

1. Neither of the defendants asserts that the plaintiff's musical was prohibited from being displayed in the auditorium because it was determined to be obscene. Furthermore, it was generally concluded by all the parties that "Hair" would be a financial success.

2. 28 U.S.C.A. § 1343(3) and (4) provides:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   *       *       *       *       *

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

funded with public monies. In addition, the auditorium is maintained at the expense of the taxpayers, and it is managed by the duly elected and appointed officials of the city. Therefore, it is undisputed that the West Palm Beach Municipal Auditorium is a *public* facility. However, the determination of ownership of property is not the sole judicial inquiry when the exercise of First Amendment rights is at issue. The crucial query is whether or not the particular public facility involved in this litigation constitutes an appropriate place for the exercise of First Amendment rights. In order to answer this issue we consider the following factors relevant:

> "does the character of the place, the pattern of usual activity, the nature of its essential purpose and the population who take advantage of the general invitation extended make it an appropriate place for communication of views on issues of political and social significance."

Wolin v. Port of New York Authority, 2 Cir. 1968, 392 F.2d 83, 89, cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275.

Applying the above criteria to the defendant city's auditorium, we think it quite evident that this particular public facility is a highly appropriate site for First Amendment activities. The essential purpose and character of the municipality's auditorium is the promotion of communication and expression for the benefit of the general citizenry in and surrounding West Palm Beach, Florida. More important, in addition to horse shows, basketball games, and ice spectaculars, the auditorium has housed many plays, musicals, and operas. Therefore, it is obvious that the West Palm Beach Municipal Auditorium has been employed as a forum in which many ideas and opinions, however mundane and jejune, have been ventilated for the past six years. Decisions of the Supreme Court and lower federal courts have held that First Amendment rights are not surrendered when one enters a public school, Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731, a public library, Brown v. Louisiana, 1966, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637, or a public bus terminal, Wolin v. Port of New York Authority, *supra*. Therefore, how can First Amendment activities be constitutionally suppressed in a public facility which is dedicated as a forum for expression?

Notwithstanding the above precedents, the defendants suggest that a municipality should be permitted to silence free expression in those facilities which the city operates in its proprietary capacity. We think this position clearly untenable. Aside from the fact that the traditional proprietary/governmental dichotomy would hardly serve as a workable standard for applying the First Amendment or any other constitutional provision, the city has advanced neither a rationale nor any case authority to support its position. Its failure in this regard can only be attributed to the fact that in those cases in which the issue has been present, the "proprietary" nature of the governmental function has not in any manner prevented the particular governmental unit from being subjected to the full impact of a constitutional provision. *See, e. g.*, Watson v. City of Memphis, 1963, 373 U.S. 526, 83 S.Ct. 1314, 10 L. Ed.2d 529 (various recreational facilities); Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (parking garage and restaurant); Holmes v. City of Atlanta, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L. Ed. 776 (city golf course); United States Servicemen's Fund v. Shands, 4 Cir. 1971, 440 F.2d 44 (county auditorium); Wolin v. Port of New York Authority, *supra*, (public bus terminal); Trujillo v. Love, D.Colo.1971, 322 F. Supp. 1266 (college newspaper); Zucker v. Panitz, S.D.N.Y.1969, 299 F.Supp. 102 (high school newspaper); Kissinger v. New York City Transit Authority, S.D.

N.Y.1967, 274 F.Supp. 438 (city subway).

We conclude that the defendant city cannot escape its constitutional obligation of making its auditorium available to the general public, including the plaintiff, on a basis consistent with the First Amendment. Furthermore, we emphasize that the plaintiff's right to use the facility is in no way diminished (1) by the fact that suitable alternative facilities exist for the presentation of the plaintiff's theatrical, or (2) because the promoter's sole reason for seeking First Amendment relief is the likelihood of pecuniary enrichment. Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584; Joseph Burstyn, Inc., v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098. In either case, the plaintiff has a constitutional right to present "Hair" in the defendant city's municipal auditorium. See Southeastern Promotions, Ltd. v. City of Atlanta, N.D.Ga.1971, 334 F. Supp. 634; Southeastern Promotions, Ltd. v. City of Charlotte, W.D.N.C.1971, 333 F.Supp. 345.

Of course, the plaintiff's right to present its musical in the West Palm Beach Municipal Auditorium is not an absolute. Indeed, the defendants assert, as an alternative basis for the district court's decision, that their refusal to license the promoter's production is entirely consistent with the city's constitutional obligations. Specifically, the city and its auditorium manager contend, and the district court agreed, that the defendants are constitutionally endowed with the unfettered discretion to regulate the auditorium's bill of fare. To this court, it is beyond the pale of possibility that our Constitution would vest in an auditorium manager, in the context of his sole and individual emotions, attitudes, philosophies, and all the other ganglia that make up the human personality, the autocratic power to shamble our revered First Amendment. Arrogation to an appointed official of the denial of the right to hear and see a controversial play cannot be accomplished sans standards.

The defendant city's ordinances relating to the management of the auditorium simply entrust managerial responsibilities to the city commission without prescribing any standards. In turn, the city commission has simply delegated its duties to the defendant Boyes, who operates the auditorium without the assistance of any independent municipal guidelines. To carry out his responsibilities, defendant Boyes, with the apparent approval of the city commission, has established a number of criteria which a prospective lessee must meet before he will be licensed to use the auditorium. One of the unwritten criteria established by the manager is that the proposed production constitute "family entertainment." And to Mr. Boyes "family entertainment" encompasses anything which, in his judgment, would not offend the community. Thus, there can be little doubt that the city ordinance, as written and as applied by the city commission, conferred upon the defendant Boyes unbridled authority to determine what shows would be displayed in the city's municipal auditorium. Accordingly, the city ordinance falls squarely within Supreme Court decisions holding that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Shuttlesworth v. City of Birmingham, 1969, 394 U.S. 147, 150–151, 89 S.Ct. 935, 938, 22 L. Ed.2d 162. Specifically, the Supreme Court in *Shuttlesworth* stated:

"'. . . we have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places.' Kunz v. New York, 340 U.S. 290, 293–294, 71 S.Ct. 312, [315], 95 L.Ed. 280, 284.

See also Saia v. New York, 334 U.S. 558, [68 S.Ct. 1148], 92 L.Ed. 1574; Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, [328], 95 L.Ed. 267, [280]. Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade according to their own opinions regarding the potential effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community."

394 U.S. at 153, 89 S.Ct. at 940. While the court below was cognizant of the *Shuttlesworth* decision, it dismissed the case in the following terms:

"In *Shuttlesworth,* the court was concerned with the conviction of Shuttlesworth for the violation of a licensing provision of the Birmingham municipal code which attempted to regulate the use of the public streets when the users desired to conduct marches and pickets. The court held that the ordinance was unconstitutionally vague and reversed the conviction. The court was concerned with a public street and there is no doubt that all citizens are entitled to be present on public avenues and ways. As long as the citizens are peaceful and orderly the state or any branch thereof can not infringe upon their rights to be there. However, in the present controversy there is no showing that the municipal auditorium of West Palm Beach was public in sense of the facilities discussed in *Shuttlesworth.*"

We find the trial judge's attempts to distinguish the *Shuttlesworth* decision completely unsound. As noted above, the defendant city's municipal auditorium is no more or less *public* than a city street. If anything, an auditorium, in First Amendment terms, can be considered more public than a municipal thoroughfare since the former is dedicated to fostering communication and expression. Moreover, we hasten to add that the factual situation in the instant case is much more offensive in a constitutional sense than the circumstances in *Shuttlesworth.* There, the petitioner was punished under the terms of an unconstitutional ordinance *after* exercising his right of free speech. In the instant case, the discretion of the defendant Boyes operated as a prior restraint upon the plaintiff's freedom of speech. *See* Near v. Minnesota, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357. Finally, we can perceive absolutely no credible reason why a city licensing authority should be restricted by the First Amendment in its regulation of the public streets and yet constitutionally empowered to "roam essentially at will" when operating inside the structural confines of its auditorium. We agree with Judge Craven's conclusion in United States Servicemen's Fund v. Shands that "[i]t is much too late in the history of the First Amendment to seriously suggest that public officials managing a public facility may pick and choose the philosophical and ideological content of programs using public auditoriums." 440 F.2d at 46.

Of course, the First Amendment is not the only constitutional provision which the defendants in this case have transgressed. In general, allowing a public official, through the exercise of a broad discretion, to determine which expression of views will be heard and which will be silenced permits the official to act as a censor. Inherent in any such censoring system is the danger that some individual will be denied the equal protection of the laws in violation of the Fourteenth Amendment. Therefore, the Supreme Court has held that "[i]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious

discrimination among persons or groups . . . by use of a statute providing a system of broad discretionary licensing power. . . ." Cox v. Louisiana, 1965, 379 U.S. 536, 557, 85 S.Ct. 453, 466, 13 L.Ed.2d 471. In the instant case the defendant Boyes has permitted the auditorium's public to hear or see only those expressions which had the blessing of Eighteenth Century morals. However, the unconventionalities of the Age of Aquarius cannot be constitutionally weighted by the bundling of our forefathers. Lest we become vassals of men rather than souls of law, we conclude that the Fourteenth Amendment prohibits this auditorium manager from being crowned a censor in chief.

In an attempt to quell the defendants' hyperbolic fears that the city, as a result of our decision, is constitutionally bound to furnish a public forum to every citizen who chooses to exercise his freedom of speech, we emphasize that this court is not infringing in the slightest upon the defendant municipality's right to prescribe constitutional criteria for the operation of its auditorium. In other words, the general principle that the First Amendment is not an absolute finds its illustration in that concept which allows municipal regulation of public facilities through the adoption and application of constitutional standards. *See, e. g.*, Cox v. Louisiana, *supra.* However, we need not be concerned with the constitutional sufficiency of any particular guideline because the city herein has not adopted, by ordinance or otherwise, any standards for the management of its auditorium. Rather, it has chosen to regulate by means of the unabashed dictates of a government subaltern. And, of course, we find this constitutionally intolerable. Accordingly, the judgment of the district court is reversed and the case is remanded with directions to grant the plaintiff appropriate declaratory and equitable relief.

Reversed and remanded with directions.