## State Farm Show Arena

By KANE, Attorney General, December 30, 1976—You have requested our opinion regarding the right of the International Movement for Krishna Consciousness to distribute literature, solicit contributions and, in general, propagate their religious beliefs at the Farm Show Complex during the annual Farm Show. Specifically, you have asked whether members of the International Movement for Krishna Consciousness (hereinafter referred to as the "Hare Krishna Movement"), or other religious groups, may, in the exercise of their First Amendment rights, enter the Farm Show Complex during the Farm Show and circulate generally throughout the complex without leasing a designated space for their activities. It is our opinion, and you are hereby advised, that members of the Hare Krishna Movement, and other religious groups, do have a First Amendment right to distribute literature and solicit donations in the Farm Show Complex during the time of the annual Farm Show as long as their activities are peaceful, orderly and do not disrupt the Farm Show or destroy the purpose of the show.

The Farm Show complex is a State-owned building which is controlled by the State Farm Products Show Commission, a bureau within the Department of Agriculture. Among the duties of the State Farm Products Show Commission is the Power, "[t]o formulate plans for, and conduct and manage, exhibitions to embrace exhibits of all agricul-

tural, industrial, and artistic products, including exhibits of all classes of farm products, embracing live stock, dairying, horticulture, all classes of manufacture, industries, and domestic arts, and such other exhibits as will best advance the interests of agriculture and other industries of the Commonwealth." Act of April 9, 1929, P.L. 177, 71 P.S. §449(a).

Pursuant to this authority, the commission annually stages the Farm Show. During the Farm Show, various persons and organizations are invited to enter and lease a specifically designated area within the complex. Most of the exhibitors are engaged in commercial activities which are related to agriculture. However, various religious and charitable organizations, such as the American Cancer Society and the Pennsylvania State Sunday School Association, have also, in the past, rented space. No exhibitors are allowed to enter the complex and circulate throughout the premises or enter free of charge. All exhibitors are charged a certain fee for their space, dependent upon the amount of space desired and the location of that space. Furthermore, all exhibitors are subject to the same rules set forth in a standard contract agreement. However, the Hare Krishna Movement contends that they should, in the exercise of their First Amendment rights, be permitted to enter the building without leasing space and circulate throughout the Farm Show Complex to proselytize their beliefs.

It is beyond dispute that the freedoms guaranteed by the First Amendment are fundamental and are applied to the States by the Fourteenth Amendment. It is also beyond dispute that there is sufficient "state action" present to trigger the re-

quirements of the Fourteenth Amendment. The Farm Show Complex is owned and operated by the Commonwealth of Pennsylvania. The annual Farm Show is operated pursuant to the control and direction of the State Farm Products Show Commission. Therefore, the issue is narrowed to whether members of the Hare Krishna Movement have a constitutional right to enter the Farm Show complex during the Farm Show and proselytize their beliefs without leasing a designated space within the Complex.

The courts have held that in order for First Amendment rights to attach to State-owned property, it must be held open to the public. Several courts have considered the nature of different types of facilities to determine whether they have historically and in actuality been open to the public. The earliest decisions dealt with sidewalks, parks and streets. In Hague v. Committee for Industrial Organization, 307 U.S. 496, 515-16 (1939), the Supreme Court held:

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public question . . ."

See also Greer v. Spock, 424 U.S. 828, 96 S. Ct. 1211 (1976), and Murdock v. Pennsylvania, 319 U.S. 105 (1943).

Other places which, for at least limited purposes, have been declared public places are: airports (International Society for Krishna Consciousness v. Dallas Fort Worth Regional Airport Board, 391 F. Supp. 606 (N.D. Texas, 1971)); bus terminals (Wolin v. Port of New York Authority,

392 F.2d 83 (2nd Cir. 1968)); public schools (Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969)); a State office building housing an unemployment office (Unemployed Workers Union v. Hackett, 332 F. Supp. 1372 (D.R.I., 1971)); a State House (Toward A Gayer Bicentennial Committee v. Rhode Island Bicentennial Foundation, 417 F. Supp. 632 (D.R.I. 1976)); and a municipal auditorium (Southeastern Promoters Ltd. v. City of West Palm Beach, 457 F.2d 1016 (5th Cir. 1972)).

Other government owned or controlled facilities have not been held to be open to the public for the exercise of First Amendment rights: prisons (Adderley v. Florida, 385 U.S. 39 (1966)); mass transit facilities (Lehman v. City of Shaker Heights, 418 U.S. 298 (1974)); a Federal military base (Greer v. Spock, 424 U.S. 828, 96 S. Ct. 1211 (1976)); a city council chamber during a council meeting (State v. McNair, 178 Neb. 763, 135 N.W.2d 463 (1965)); and, by way of dicta, hospitals, libraries and office buildings (Chicago Area Military Project v. City of Chicago, 508 F.2d 921 (7th Cir. 1975)).

The question of whether the Farm Show complex itself is a public facility must now be resolved. The complex is operated by the Commonwealth and is funded with public moneys. In addition, the State Farm Products Show Commission has the authority under section 1709 of The Administrative Code of 1929, 71 P.S. §449, "to lease space to exhibitors, including the departments, boards, and commissions of the State Government, and to lease the Farm Show Building, at any time, to individuals, associations, or corporations, for exhibitions, conventions, or other proper purposes. . . ."

To that end, the commission has leased the

building for various meetings, conventions and sporting events regardless of whether they are related to agriculture. Furthermore, as prevously indicated, exhibitors during the Farm Show have included organizations which were not necessarily tied to agriculture.

In Southeastern Promotions, Ltd. v. City of West Palm Beach, 457 F.2d 1016 (5th Cir. 1972), the court had to determine whether a municipal auditorium was a public place. The court in reaching its decision had little difficulty.

"[T]his municipal facility was constructed by the citizens of West Palm Beach and funded with public monies. In addition, the auditorium is mantained at the expense of the taxpayers, and it is managed by the duly elected and appointed officials of the city. Therefore, it is undisputed that the West Palm Beach Municipal Auditorium is a *public* facility." 457 F.2d 1016, 1018, 1019 (5th Cir. 1972).

Furthermore, the considerations apparent in those cases where the courts thought government facilities were not open to the public[1] are not evi-

---

1. In Adderley v. Florida, 385 U.S. 39 (1966), the court relied heavily on the need for security in holding that a prison was not a public place. In Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211 (1976), the majority stressed the need for discipline and order in training soldiers. In Lehman v. City of Shaker Heights, 418 U.S. 298 (1974), the fact that passengers on mass transit vehicles represented a captive audience swayed the court. Finally, in State v. McNair, 178 Neb. 763, 135 N.W.2d 463 (1965), the decision rested on the fact that plaintiffs had intended to disrupt a municipal council meeting through the exercise of their freedom of speech. It is apparent that the facts which influenced the courts in the preceding cases, such as the overriding need for security and discipline, are absent in the instant matter.

dent in this instance. Therefore, it is quite clear that the Farm Show Arena does qualify as a public facility.

Once a facility has been designated as being open to the public, the inquiry does not end. The government still might constitutionally restrict the exercise of First Amendment rights therein. See Cox v. Louisiana, 379 U.S. 536, 538, 539 (1965); Chicago Area Military Project v. City of Chicago, 508 F.2d 921, 925 (7th Cir. 1975); and Toward A. Gayer Bicentennial Foundation, 417 F. Supp. 632, 638 (D.R.I. 1976).

The test for determining when the government may restrict the exercise of First Amendment rights in a public facility was best expressed in Wolin v. Port of New York Authority, 392 F.2d 83, 89 (2nd Cir. 1968). The court in Wolin held:

"[W]here the issue involves the exercise of First Amendment rights in a place clearly available to the general public, the inquiry must go further: does the character of the place, the pattern of usual activity, the nature of its essential purpose and the population who take advantage of the general invitation extended make it an appropriate place for communication of views on issues of political and social significance."

The test, as expressed in Wolin, turns on the question of whether the forum is appropriate for the expression of First Amendment rights.

In the present case, the Farm Show complex consists of a large auditorium (the arena) and several small surrounding halls and rooms. Movement from one area to another is facilitated by several connecting passageways. During the annual Farm Show, exhibitors lease space in the auditorium and surrounding halls, and the public

is invited to enter and view the exhibits. During a normal day several thousand persons will visit the Farm Show and view the exhibits. The essential purpose of the Farm Show, according to section 1709 of The Administrative Code of 1929, 71 P.S. §449(a), is the promotion of agriculture and other industries of the Commonwealth. However, as previously indicated, exhibitions not related to agriculture are permitted within the complex and the invitation is to the public at large.

Utilizing the Wolin test, it is evident that the Farm Show is not an inappropriate forum for the expression of First Amendment rights. It is a facility designed so that large numbers of people may move around easily and, indeed, the purpose of the Farm Show is to attract a large segment of the public. Therefore, subject to the subsequently enumerated conditions, the Hare Krishna Movement may proselytize their religious beliefs during the annual Farm Show.

While the Farm Show complex may be a public place which is appropriate for the expression of First Amendment rights, the Department of Agriculture is not powerless to regulate the nature of the Farm Show and conduct of the Hare Krishna Movement at the Farm Show.

"The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." Cox v. Louisiana, 379 U.S. 536, 554 (1965).

"Wherever the title of streets and parks may rest,

they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. . . The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order." Hague v. Committee for Industrial Organization, 307 U.S. 496, 515 (1939).

Therefore, the right of the Hare Krishna Movement to proselytize their beliefs at the annual Farm show may be limited by the Commonwealth in order to preserve the interests of the public in general. The question then arises as to how and when the Commonwealth may limit the exercise of First Amendment rights.

Several cases have held that the State may limit the expression of First Amendment rights in order to preserve public peace and protect the general order: Cox v. Louisiana, 379 U.S. 536 (1965); Chaplinsky v. New Hampshire, 315 U.S. 568 (1942); Benson v. Rich, 448 F.2d 1371 (10th Cir. 1971). Therefore, the State may act to suppress or to prevent an imminent breach of peace or the disruption of its activities. However, it should be pointed out that one's First Amendment rights may not be abridged because of the possibility of disorder on the part of others: Brown v. Louisiana, 383 U.S. 131, 133 (1966); Wright v. Georgia, 373 U.S. 284, 293 (1963).

The Department of Agriculture may also act to limit the activities of the Hare Krishna Movement

if its activities alone, or combined with the activities of other groups in similar circumstances, threaten the essential nature of the Farm Show.

"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." Adderley v. Florida, 385 U.S. 39, 47 (1966).

See also Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211 (1976), Benson v. Rich, 448 F.2d 1371 (10th Cir. 1971).

The essential purpose of the Farm Show, as previously indicated, is the advancement of agriculture and other industries of the Commonwealth of Pennsylvania. If the actions of the Hare Krishna Movement, or other groups exercising their First Amendment rights, threaten to seriously impair or destroy the primary purpose of the Farm Show, then the Department of Agriculture may take action to limit the expression of First Amendment rights and preserve the purpose of the Farm Show.

Finally, it should be pointed out that although the Hare Krishna Movement solicits contributions in order to defray their costs, it is of no consequence and does not remove their activities from the protection afforded by the First Amendment. As long as the solicitation of funds remains incidental to the essential nature of their purpose, the propagation of their religious beliefs, the Hare Kirshna Movement may solicit contributions under the protection of the First Amendment: Murdock v. Pennsylvania, 319 U.S. 103, 105 (1943); International Society for Krishna Consciousness v. City of New Orleans, 347 F.Supp. 945 (E.D. La. 1972).

In conclusion, it is our opinion, and you are

hereby advised, that the Hare Krishna Movement, and other religious groups, do have a First Amendment right to proselytize their religious beliefs at the annual Farm Show and to solicit donations to defray costs. However, the Department of Agriculture may act to limit the activities of the Hare Krishna Movement in order to promote the interests of the public at large, maintain public order or preserve the essential character and nature of the Farm Show. Prior to taking any action that would limit the activities of the Hare Krishna Movement, or other religious groups at the Farm Show Complex, the Department of Agriculture should consult with the Justice Department.[2]

---

2. A question does arise as to whether the Department of Agriculture, by permitting members of the Hare Krishna Movement to enter the complex during the Farm Show and proselytize their beliefs, has violated the Establishment Clause of the First Amendment. A review of decisions involving the Establishment Clause demonstrates that this is not the case.

The test to determine whether certain State activities violate the Establishment Clause is best enunciated in School District of Abington Township v. Schempp, 374 U.S. 203, 222 (1963):

"[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

See also Lemon v. Kurtzman, 403 U.S. 602 (1971).

In the instant case, the purpose and effect of permitting members of the Hare Krishna Movement to proselytize their beliefs at the annual Farm Show, is simply to afford them the same opportunity to exercise their First Amendment rights, in an appropriate place, as would be afforded any other group.

A review of Keegan v. University of Delaware, 349 A.2d 14

(Del. Super. 1975), is instructive. In Keegan, the court held that the University of Delaware did not run afoul of the Establishment Clause by allowing a Roman Catholic group to hold religious services in the commons room of a dormitory. The court held that no violation of the Establishment·Clause occurred where religious groups were allowed the same rights and privileges attendant with the use of the commons room as were accorded other groups. Accepting the decision in Keegan, where the court permitted a religious service in the State-owned dormitory, the Department of Agriculture, a fortiori, does not violate the Establishment Clause in this matter where there is no religious service.