**J. B. STONER, Plaintiff,**

v.

**Ronnie THOMPSON, Individually and as Mayor of the City of Macon, Georgia, Defendant.**

**Civ. A. No. 74–89.**

United States District Court,
M. D. Georgia,
Macon Division.

June 10, 1974.

J. B. Stoner, Marietta, Ga., for plaintiff.

Lawton Miller, City Atty., Miller & Miller, Macon, Ga., for defendant.

OWENS, District Judge:

Approximately one year ago the Mayor and Council of the City of Macon purchased the equipment and hired the former employees of its public bus transportation franchisee Bibb Transit Company and began operating its own public bus transportation system.[1] At the time it ceased operations Bibb Transit Company was and for many years had been displaying commercial advertisements on the outside and inside of its buses. From time to time those advertisements had included those of candidates for public office. All such advertisements were arranged for by Tom O'Ryan Advertising Company pursuant to a written contract between that company and Bibb Transit Company.

Mr. A. H. Mitchell, Director of Transportation for the City of Macon, had been employed for many years by Bibb Transit Company and was familiar with the arrangement between the company and Tom O'Ryan Advertising Company. After the City of Macon began its bus operations a meeting of the members of the Transportation Committee[2] of Mayor and Council as chaired by Councilman Dr. Andrew Lawrence and representatives of Tom O'Ryan Advertising Company was held. Mr. Mitchell was

1. The evidentiary background for this case comes partly from the previous case of Joiner v. Thompson, et al., Civil No. 2882, Macon Division.

2. The municipal government of the City of Macon consists of a Mayor and fifteen aldermen. They constitute the Legislative Department of the City with the Mayor being designated as the presiding officer and having the power to veto ordinances and resolutions. As presiding officer the Mayor may participate in deliberations of council but generally may not vote. The Mayor is designated as Chief Executive Officer but nevertheless matters of policy are generally determined by committees of the council. The Mayor appoints the members of such committees and designates who shall serve as chairman. See sections 1–33, Charter, City of Macon, 1927 Georgia Laws Act No. 119, as amended.

present; Mayor Thompson is not a member of that committee and was not present. At that meeting it was agreed that Tom O'Ryan Advertising Company would continue to handle bus advertising for the City of Macon. No written contract was proposed or entered into. No resolution or ordinance was proposed to City Council by the Transportation Committee or passed by City Council. Since then Tom O'Ryan Advertising Company has furnished advertising material to the City of Macon and it has been displayed inside of and outside on buses by the City of Macon. Those buses as a matter of common knowledge operate daily throughout the City of Macon.

On May 6, 1974, plaintiff J. B. Stoner, an announced candidate for the office of Lieutenant Governor of the State of Georgia, placed an order for advertisements of his candidacy to be placed on the outside of buses in Macon and other places for a period of one month. Pursuant to that order Tom O'Ryan Advertising Company prepared such ads and sent them to the Transportation Department of the City of Macon around May 14, 1974. They were promptly placed on the outside of City of Macon buses. On May 22, 1974, Mayor Thompson ordered Transportation Director Mitchell to remove plaintiff Stoner's advertisements from all city buses.

Plaintiff Stoner filed his complaint in this court on May 28, 1974, and on June 3, 1974, his prayer for a preliminary injunction was heard. This constitutes the court's order as required by Rule 65(d), Federal Rules of Civil Procedure.

The court has jurisdiction under 28 U.S.C.A. § 1343(3) and (4), and 42 U.S.C.A. § 1983.

In addition to the facts already recited, the court learned from Mayor Thompson that on November 8, 1968, he had promulgated the following:

### "EXECUTIVE ORDER

"SUBJECT: Advertisements on City Owned Vehicles and Equipment

### "TO ALL DEPARTMENT HEADS:

"As of this date, there will no *advertisements*, bumper stickers, displays, etc. placed on any City owned vehicle or piece of equipment.

"/s/ Ronnie Thompson
"Mayor, City of Macon"

Exhibit D–2, emphasis added. In directing Mr. Mitchell to remove plaintiff Stoner's ads Mayor Thompson stated that he was merely carrying out this "executive order."

On May 22, 1974, Mayor Thompson also promulgated the following:

"MEMO TO:     All Department Heads

"FROM:     Mayor Ronnie Thompson

"It has been the policy of this Administration and my previous Administration to prohibit any political advertisements on City-owned vehicles, equipment or properties.

"So that the record will be straight and clear—

"DO NOT place any political advertisements on any City-owned vehicles, equipment or properties.

"/s/ Ronnie Thompson
"Mayor, City of Macon"

Exhibit D–3, as an executive order. In response to the court's pointed questions, the court was not advised of the source of the Mayor's authority to issue these or any other so-called "executive orders."

Even if the Mayor had such authority and even if these "executive orders" were the constitutionally permissible limitations of First Amendment rights hereinafter mentioned, the Mayor would still have the burden of explaining how the word "advertisements" as used in his November 8, 1968, "executive order" can be interpreted as prohibiting political advertisements and at the same time as not prohibiting the many other varieties of advertisements seen by all citizens on and in city buses.

The First Amendment to the Constitution of the United States as made applicable to the states by the Fourteenth Amendment provides in part:

"Congress shall make no law . . . abridging the freedom of speech. . . ."

■ Buses operated daily by the City of Macon for the transportation of the public—like the city streets, city sidewalks, city auditorium, city coliseum, and city parks—are appropriate places and facilities for the exercise of First Amendment rights. Wolin v. Port of New York Authority, 392 F.2d 83 (2d Cir. 1968), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275. In arriving at this conclusion the court has considered that these buses are vehicles (1) that go up and down the streets of the City of Macon displaying to the public at large whatever messages are placed on the outside of the buses and to those who ride the buses, whatever messages are placed on the inside of the buses; (2) that transport citizens who communicate with each other and express themselves about matters of current interest including candidates for public office; and (3) that are owned by and operated for the benefit of each and every citizen. Like in public schools, Tinker v. De Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, public libraries, Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637, privately owned but publicly regulated transit vehicles and terminal facilities, Public Utilities Commission v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068, a public bus terminal, Wolin v. Port of New York Authority, *supra*, and a city auditorium, Southeastern Promotions, Ltd. v. City of West Palm Beach, 457 F.2d 1016 (5th Cir. 1972), First Amendment rights are not surrendered when one rides on or looks at a city bus.

■ As this district court on September 5, 1973, in Joiner v. Thompson, et al., Civil No. 2882, Macon Division, specifically advised defendant Mayor Thompson the Supreme Court in 1945 in Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, as to the permissible curtailment of First Amendment rights by governmental action stated:

"The case confronts us again with the duty our system places on this Court to say where the individual's freedom ends and the State's power begins. Choice on that border, now as always delicate, is perhaps more so where the usual presumption supporting legislation is balanced by the preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment. Cf. Schneider v. Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 ALR 1352; Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438 [88 L.Ed. 645]. That priority gives these liberties a sanctity and a sanction not permitting dubious intrusions. And it is the character of the right, not of the limitation, which determines what standard governs the choice. Compare United States v. Carolene Products Co., 304 U.S. 144, 152, 153, 58 S.Ct. 778, 783, 784, 82 L.Ed. 1234 [1241, 1242].

For these reasons any attempt to restrict those liberties must be justi-

fied by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice.

These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. · All these, though not identical, are inseparable. They are cognate rights. Cf. De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 259, 81 L.Ed. 278 [283], and therefore are united in the First Article's assurance. Cf. 1 Annals of Congress 759–760.

This conjunction of liberties is not peculiar to religious activity and institutions alone. The First Amendment gives freedom of mind the same security as freedom of conscience. Cf. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 ALR 468; Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 ALR 1446; Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438 [88 L.Ed. 645]. Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones. And the rights of free speech and a free press

are not confined to any field of human interest." *Id.* 323 U.S. at 529, 65 S.Ct. at 322, 89 L.Ed. at 440.

Mayor Thompson in restricting this plaintiff's First Amendment rights says that he as Mayor has determined that "We're not going to advertise for any political candidates this year." Macon Telegraph, Exhibit B to Complaint. He does not say or seem to contend that this determination is based upon a finding that political advertising is a clear and present danger to the citizens of Macon. As he surely realizes, such a contention on the part of a defendant who is now a Mayor, was a candidate for the Congress of the United States and is now a candidate for the office of Governor in both the Democratic and Republican primary elections to be held in August, would be absolutely without foundation or merit. As desirable as the defendant Mayor Thompson may think it to be, neither he nor any other public official absent a showing of clear and present danger can restrict First Amendment rights by simply deciding "We're not going to advertise for any political candidates this year." There has been no showing here, the court perceives no clear and present danger, clear and present danger is not obvious—accordingly, the Mayor did not have the legal right to so restrict the constitutional rights of the plaintiff J. B. Stoner or any other person.

As the Fifth Circuit Court of Appeals stated in Southeastern Promotions Ltd. v. City of West Palm Beach, 457 F.2d 1016, at page 1021:

"Of course, the First Amendment is not the only constitutional provision which the defendants in this case have transgressed. In general, allowing a public official, through the exercise of a broad discretion, to determine which expression of views will be heard and which will be silenced permits the official to act as a censor. Inherent in any such censoring system is the danger that some individual will be denied the equal protection of the laws in violation of the Fourteenth Amend-

ment. Therefore, the Supreme Court has held that '[i]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups . . . by use of a statute providing a system of broad discretional licensing power . . . .' Cox v. Louisiana, 1965, 379 U.S. 536, 557, 85 S.Ct. 453, 466, 13 L.Ed.2d 471."

As in that case, this defendant Mayor Thompson has permitted those who read whatever advertising is upon the outside of or displayed inside of City of Macon buses to read and receive only those expressions which have his blessing. "Lest we become vassals of men rather than souls of law, we conclude that the Fourteenth Amendment prohibits this . . . [Mayor] from being crowned a censor in chief." *Id.* at 1022.

As has been repeatedly[3] stated by the Fifth Circuit Court of Appeals and this court, the Mayor and Council have a right to prescribe constitutional criteria for the operation of all phases of the municipal government that was created by the legislature of this state and named The City of Macon. As in past cases where unwritten policies were relied upon, the court is not concerned here with the constitutional sufficiency of any particular guideline because Mayor and Council have not adopted any, by ordinance, resolution or otherwise. Mayor and Council continue to permit the defendant Mayor to regulate by means of his unabashed dictates. As Mayor he cannot constitutionally do so.

The preliminary injunction prayed for is hereby granted, and the defendant Ronnie Thompson, individually and as Mayor, is hereby enjoined from immediately failing to do whatever is necessary to cause the advertisements of the plaintiff to be displayed on the exterior of buses of the City of Macon in the manner contemplated by plaintiff's contract, Exhibit A, for a period of one month beginning as soon as possible.

This preliminary injunction is binding upon the defendant, his agents, servants, employees and attorneys and upon those persons in active concert or participation with him who receive actual notice of this order by personal service or otherwise. Rule 65(d), Federal Rules of Civil Procedure. It shall remain in full force and effect until further order of the court.

---

3. *See* Bloch v. Thompson, 472 F.2d 587 (5th Cir. 1973) ; Barnes v. Merritt, 428 F.2d 284 (5th Cir. 1970) ; Barnes v. Merritt, 376 F. 2d 8 (5th Cir. 1967) ; Kwickie Food Stores v. Thompson, Civil No. 74–58, Macon Division; Pupa v. Thompson, 377 F.Supp. 453, Macon Division.