## Commonwealth v. Siwert

*Michael Vedomsky*, for Commonwealth.
*Arnold Siwert, Sr., p.p.*, for defendant.

FRANCIOSA,*J.*, March 16, 1977 — On February 24, 1976, following a jury trial before Franciosa,*J.*, defendant was found guilty of disrupting meetings and processions in violation of section 5508 of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §5508. On March 1, 1976, defendant filed a letter entitled "Post-Verdict Motions" in which he claimed, inter alia, that his civil rights had been violated at trial. These motions are now before the court en banc for disposition.

Although defendant's motions are not couched in legal phraseology, we join in the Commonwealth's interpretation that two issues have been preserved:

I. Did the Commonwealth produce sufficient evidence to support the verdict of guilty?

II. Did the application of section 5508 of the Pennsylvania Crimes Code violate defendant's first amendment rights?

Due to our resolution of the first issue, we do not

find it necessary to discuss the constitutional question.

The standard by which the sufficiency of the evidence is tested has been well defined. We must consider the entire testimony in the light most favorable to the Commonwealth: Act of June 15, 1951, P.L. 585, 19 P.S. §871.

"The test of sufficiency of evidence is whether accepting as true all the evidence and all reasonable inferences therefrom, upon which the finder of fact could properly have based its verdict, we find it sufficient in law to prove beyond a reasonable doubt that the defendant is guilty." Commonwealth v. Zymroz, 242 Pa. Superior Ct. 27, 363 A. 2d 1142, 1143 (1976).

Although the Commonwealth does not have to establish guilt to a mathematical certainty, the conviction must be based on more than mere suspicion or conjecture: Commonwealth v. Roscioli, 454 Pa. 59, 309 A. 2d 396 (1973).

When so viewed, the evidence may be summarized as follows:

On October 18, 1975, Minister Robert Bragg, of the World Wide Church of God, conducted a religious service at a Union Building located on Lehigh Street in Bethlehem, Pa. Prior to the commencement of said service, Minister Bragg noticed defendant and his wife seated in the front row of the congregation. A brief conversation ensued, after which the minister directed his assistant to call the police, because he feared that defendant would interrupt the proceedings, as he had apparently done in the past. Two members of the Bethlehem Police Department responded to the call, but took no action against defendant because he had committed no overt act as of the time of their arrival. The

officers, at the request of Minister Bragg, remained in the building during the duration of the service.

As part of the service, Minister Bragg informed his congregation about future social events that had been planned by the church. Subsequent to these announcements, the minister commenced the delivery of his sermon. The minister's theme pertained to circumstances under which members of the congregation would be permitted to address fellow worshipers during regular prayer services. Several passages from First Corinthians were read by the minister during the course of his sermon in support of the procedure used by his church. Defendant, not satisfied with the completeness of the minister's presentation, rose and asked to be recognized, citing First Corinthians 14:30 as authority for being permitted to speak. However, Minister Bragg refused to allow defendant to address his congregation, and after an exchange of words, requested the Bethlehem Police to remove defendant. The entire incident lasted no longer than five minutes and consisted merely of an exchange of statements between the minister, defendant and Mrs. Siwert.* Defendant accompanied the police to the vestibule of the building, where he was told he was free to leave. However, defendant remained in the hallway conversing with several officers for over an hour, during which time the service continued. Because defendant refused to leave the building voluntarily, he was placed under arrest.

---

*Mrs. Siwert was convicted of disruption of the meeting and of assault on the arresting officer. However, after an on-the-record colloquy, she withdrew her post-verdict motions. At that time, she moved for immediate sentencing and was placed on probation.

## DISCUSSION

Section 5508 of the Pennsylvania Crimes Code provides that: "A person commits a misdemeanor of the third degree if, with an intent to prevent or disrupt a lawful meeting, procession or gathering, he disturbs or interrupts it."

We have been unable to find any reported decision in Pennsylvania wherein this statute has been subjected to judicial scrutiny and interpretation. However, our analysis of the historical underpinnings on which this section is fastened convinces us that defendant's conduct fell short of that which is prohibited by the above section. Accordingly, we hold that defendant's conviction cannot stand.

The commentary of the Joint State Government Commission to section 5508 of the Pennsylvania Crimes Code indicates that this section is derived from section 250.8 of the Model Penal Code. The comments to tentative draft 13 of the Model Penal Code, at page 38, state:

"This section, based on a variety of provisions found in existing codes, supplements Section 250.1 (Disorderly Conduct) principally by penalizing offensive utterance which is not unreasonably loud, coarse, indecent or abusive as required in the earlier section. For example, to interject atheistic speeches in a meeting of the devout, to taunt the Irish marching on St. Patrick's Day, or otherwise to flout the sentiments of a lawful gathering so outrageously as to support an inference of purpose to disrupt the gathering, these are activities fraught with possibilities of imminent violence, a special, narrowly defined case for application of the 'clear-and-present-danger' idea which we rejected as a general criterion of disorderly conduct in Comment

3 to Section 250.1. The situation is also distinguishable from other kinds of 'disturbing speech' in that here we must balance the actor's freedom of speech against equally cherished freedoms of the persons who are meeting, mainly, freedom of association, religion and peaceful communication."

Prior to the drafting of the Model Penal Code, the following conduct had been held by various State courts to constitute criminal disturbances of religious meetings:

— where one entered a room in which the Salvation Army was holding religious services, with a cigar in his mouth, and without removing his hat, and persisted in this conduct after he had been requested to desist: Hull v. State, 120 Ind. 153, 22 N.E. 117 (1889)

— where one wore a false moustache and went forward while the preacher was calling for mourners, exciting laughter from persons sitting in the rear of the church: Williams v. State, 83 Ala. 68, 3 So. 743 (1887)

— where one cracked, picked out, and ate pecans in church during the service: Hunt v. State, 3 Tex. App. 116, 30 Am. Rep. 126 (1877)

See, generally, annotation, conduct amounting to offense of disturbing public or religious meeting, 12 A.L.R. 650 (1921).

The drafters of the Model Penal Code made it abundantly clear that the code was not intended to reach such conduct:

"Nevertheless, we do not go so far as some statutes which purport to reach any disturbance or interruption of a meeting. A purpose to prevent or obstruct the proceedings must be shown; otherwise

the actor must have engaged in behavior which is itself disorderly." Comments to tentative draft 13, supra, at 38.

It is interesting to note that the above distinction was recognized as early as 1920, in an opinion of the Nebraska Supreme Court in the case Gaddis v. State, 105 Neb. 303, 180 N.W. 590, 12 A.L.R. 648. Because the factual situation confronting the court in Gaddis is closely analogous to that in the case at bar, we believe it instructive to briefly summarize Mr. Gaddis' activities on the morning of November 9, 1919, at the Christian Church of Beaver City, Nebraska, out of which his prosecution was based.

On the aforesaid occasion, Mr. Gaddis, a charter member of the church, attended a congregational meeting during which the minister spoke about communion. In the course of the sermon, the minister stated that the church deacons, in conducting communion services, had the right to pass a member whom they believed to be unworthy of communion. At this point, defendant, citing First Corinthians XI:28, 29, arose from his pew and interrupted the discourse. Mr. Gaddis' position, as voiced to the congregation, was that the minister's pronouncements were erroneous. Although at least two persons left the building during the commotion and the choir "voiced a protest by an impromptu musical service," the court, in a well-reasoned opinion, refused to attach any criminality to Mr. Gaddis' behavior:

"It is manifest from undisputed evidence that defendant interrupted religious meeting, but it is not every interruption that constitutes a violation of law. Without violating the statute forbidding the interruption of a religious meeting, members of the society may repel a lawless invasion either from

without or from within. Under the same principle, a member of a religious society, if permitted by its precepts and usages, may, in a becoming manner with good motives, interrupt a minister to correct utterances at variance with established tenets or rights. Otherwise, freedom of worship and free speech might be impaired by bigotry and false doctrines. The proper and orderly exercise of these rights, though resulting in a commotion during a religious meeting, is not punishable in a criminal court. Defendant no doubt reasoned in his own mind that silence on his part would imply his consent to a discipline depriving his brethren, without accusation or hearing, of the sacred right of communion on the mere belief of deacons that the brethren were unworthy. Under such circumstances, he had a right to speak, even in the midst of a sermon, unless he had by some means committed himself to silence." Gaddis v. State, 105 Neb. 303, 3-5-06, 180 N.W. 590, 12 A.L.R. 648, 649-650.

Mr. Siwert's actions appear to have been similarly motivated. There has been no showing that Mr. Siwert's conduct was inherently disorderly, or presented a clear and present danger to anyone's safety. Under the circumstances present in this case, we believe the evidence to be insufficient with respect to the Commonwealth's contention that defendant's actions were intentionally designed to disrupt the meeting. The clear evidence is that defendant merely sought to expand and amplify the minister's statements, so they could not be taken out of context in such a manner so as to deprive any worshiper of what defendant thought was an inherent right to speak God's words. Our analysis of section 5508 convinces us that it was never intended to attach a criminal label to such conduct.

However, in so ruling, we emphasize that, in a

596

proper case, section 5508 may, indeed, apply to conduct by members of a religious group during the service. "The protection afforded by the law from the disturbance of a meeting not only is a safeguard from disturbance by outsiders, but also protects the meeting from acts of its own members. A member of the assemblage, although he is a member of the particular organization having control of the meeting, is bound to regard its peace and order; and no permission to speak given by the leader or conductor of the services will justify or excuse such discourse on the part of the speaker as is unbecoming to the assemblage and by its violence offends the order and decorum essential to worship. To constitute an unlawful disturbance, however, the act must be inconsistent with the legitimate purpose of the assemblage. Though willful, it will not constitute an offense if it is done in the reasonable exercise of a right." 2 Wharton's Criminal Law and Procedure, §813, 674-76 (Anderson Ed. 1957).

Wherefore, we enter the following

### ORDER OF THE COURT EN BANC

And now, March 16, 1977, defendant's post-verdict motion in the nature of an arrest of judgment is granted.