**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Collette Champagne McCOY,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 2012.
Filed May 23, 2013.
Reargument Denied Aug. 1, 2013.

Brie R. Halfond, Public Defender, Reading, for appellant.

Melissa J. Noyes, Assistant District Attorney, Reading, for appellee.

BEFORE: PANELLA, J., OTT, J., and STRASSBURGER, J.*

OPINION BY OTT, J.

Collette Champagne McCoy appeals from the judgment of sentence entered against her in the Court of Common Pleas of Berks County following her conviction on charges of disorderly conduct, disrupting a procession, and conspiracy to disrupt a procession.[1] McCoy was sentenced to an aggregate term of 2 years' probation and 200 hours of community service. On appeal, McCoy claims 18 Pa.C.S. § 5508 is unconstitutionally vague, facially overbroad and unconstitutional as applied, there was insufficient evidence to support the convictions, and her sentence was manifestly excessive. After a thorough review of the submissions by the parties, relevant law, and the official record, we affirm in

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. §§ 5503(a)(3), 5508 and 903(a)(1), respectively. The trial court acquitted McCoy of violating Section 5503(a)(4).

part, vacate in part, and remand for resentencing.

On June 30, 2011, a 40–50 car funeral procession for Sheriff's Deputy Kyle Pagerly, who had been killed in the line of duty, was slowly making its way through Reading. N.T. Trial, 2/13/12, at 19, 9. The procession consisted of fire, police, military and civilian vehicles. *Id.* at 10. The emergency lights were activated on the official vehicles, but not the sirens. *Id.* It took between five to ten minutes for the entire procession to pass. *Id.* at 45. There were people lined up along the route. *Id.* at 12. Some were crying, some had hands over their hearts, some bowed their heads. *Id.* at 11. At approximately 3:45 p.m., as the procession passed along the 300 block of Penn Street, police officers in the procession saw McCoy and her co-defendant, Walter Javan Pruitt, walking along the street. Affidavit of Probable Cause, N.T. Trial at 12. McCoy crossed the street, walking through the procession. *Id.* at 12–13. As the two walked in the street, feet away from the cars in the procession, they shouted, "Fuck the police," multiple times. *Id.* at 13. First, one would shout it and then the other would respond. *Id.* at 50. As McCoy walked down the street, shouting, she was also pumping her fist and laughing. *Id.* at 50–51. As Pruitt walked down the street, he was swinging a red and white Sneaker Villa bag over his head. *Id.* at 50.[2] As the procession passed, Pruitt also crossed the street between the cars. *Id.* at 15–16.

As McCoy and Pruitt went down the street, next to the procession, waving the bag, pumping fists, and shouting, observers of the procession were reacting with disgust. *Id.* at 37, 52. Because the police did not know what Pruitt, especially, was going to do next, *id.* at 24, 32, 34, and due to the reactions of the observers, several police cars left the procession to respond to McCoy and Pruitt. *Id.* at 16, 36–37, 52. One police officer had to push through an individual to approach Pruitt, *id.* at 24, and observers cheered the police for stopping McCoy and Pruitt. *Id.* at 52. The police stopped McCoy and Pruitt and arrested them for interrupting a procession and disorderly conduct. *Id.* at 17.

McCoy was convicted of violating 18 Pa. C.S. §§ 5505(a)(3)[3] and 5508. In relevant part, Section 5503 states:

(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . . .

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S. § 5503(a)(3). Section 5508 states, *in toto*:

A person commits a misdemeanor of the third degree if, with intent to prevent or disrupt a lawful meeting, procession or gathering, he disturbs or interrupts it.

18 Pa.C.S. § 5508.

McCoy's first argument is that Section 5508 is unconstitutionally vague, facially overbroad, and unconstitutional as applied because the *mens rea* and *actus reus* are too ambiguous and subsequently criminalizes a substantial amount of constitutionally protected speech.

[D]uly enacted legislation is presumed valid and unless it clearly and plainly violates the Constitution, it will not be

---

**2.** The bag contained clothes and a digital scale that had cocaine residue on it. Pruitt was also charged with possession of drug paraphernalia.

**3.** The trial court acquitted McCoy of violating § 5503(a)(4) creating a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

declared unconstitutional. Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion.

*Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 207 (2007) (internal citations omitted).

Under the void-for-vagueness standard, a statute will only be found unconstitutional if the statute is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." However, a statute will pass a vagueness constitutional challenge if the statute "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

*Id.* (internal citations omitted).

McCoy's argument is premised on the assertion that the statutory language barring the intent to "prevent or disrupt" a procession and a resulting "disturbance or interruption" of the procession does not sufficiently inform a person what he or she may not do. McCoy claims that such broad language "encourages arbitrary and erratic arrests and convictions."[4]

McCoy, however, has not explained or given examples of, what behavior would lead to the arbitrary enforcement of the statute.[5] Given that it is McCoy's "heavy burden of persuasion", *Davidson, supra*, to demonstrate how the statute is impermissibly vague, we do not believe the unsupported allegations suffice. Moreover, we agree with the trial court's statement in its Pa.R.A.P. 1925(a) opinion, "A citizen is on

notice that he or she may not disrupt a lawful meeting, procession or gathering by disturbing or interrupting it. An ordinary person would understand what conduct is prohibited and would have no reason to guess at the meaning of the word "disrupt." " *See* Trial Court Opinion at 11. The words used by the legislature are plain in their ordinary meaning and we do not believe they are unconstitutionally vague.

▉▉▉ Next, McCoy claims the statute is facially overbroad. A statute is facially overbroad,

only if it punishes lawful constitutionally protected activity as well as illegal activity. Thus, in determining whether a statute is unconstitutional due to overbreadth, a "court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." The "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Commonwealth v. Davidson*, 938 A.2d at 208 (internal citations omitted).

Additionally, "the United States Supreme Court has described application of the overbreadth doctrine as 'strong medicine' which is 'employed sparingly and only as a last resort.' " *Id.* (citation omitted).

Initially, when determining whether a substantial amount of constitutionally protected activity is affected, we recognize "freedom of speech is subject to numerous constraints that render it a less-than absolute right in practice. The rights of others

---

**4.** *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

**5.** We note Section 5508 was adopted in 1972. In the forty-plus years since, there are only two cases annotated. *Commonwealth v. Si-*

*wert*, 4 Pa. D. & C.3d 589 (1977) and *Laverdi v. Jenkins Tp.*, 49 Fed.Appx. 362 (3d Cir.2002) (unreported). There does not appear to have been problems with encouraging arbitrary arrests or convictions under this Section.

sometimes clash with and restrict one's freedom of speech. Just as one does not have the right to shout 'fire' in a crowded theater," [6] so too, the Commonwealth has the authority to regulate those actions, which might include an element of speech, which disturb or interrupt a lawful procession.

Therefore, we reject McCoy's argument that because shouting "fuck the police" is not itself prosecutable, this statute is overbroad. Rather, we believe that facially, this statute requires a reasonable balance between protecting the First Amendment rights of those seeking to engage in a lawful procession, with the First Amendment rights of those who may be observing or are nearby.

■ McCoy's final constitutional argument is that the statute is unconstitutional as applied in that both the *actus reus* and *mens rea* are too ambiguous and criminalize a substantial amount of protected speech. This claim is based on the assertion that McCoy was "arrested and convicted of exercising pure speech." *See* Appellant's Brief at 29. However, our review of the official record does not support that assertion.

The evidence presented at trial was that the pair crossed the street through the funeral procession, swung a bag over head, conducted fistpumping actions, shouted "fuck the police" numerous times, all while walking on the street and along the procession route, through the onlookers who were visibly disgusted, and within feet of the procession. These actions provided probable cause to stop McCoy and Pruitt and caused several police officers to leave the procession to respond. A reasonable person would be on notice that such actions would disturb the procession and thereby infringe on another's rights. McCoy, demonstrably, was not arrested and convicted for exercising pure speech. Rather, the evidence, viewed in totality, showed McCoy and Pruitt were engaging in a variety of actions, all of which combined, disturbed the procession.[7] Therefore, the statute is not unconstitutionally vague as applied.

■ In her next issue, McCoy argues her convictions are invalid due to an insufficiency of evidence. Her argument regarding Section 5508 is based, at least partially on a standard of evidence used by the trial court of Northampton County in *Commonwealth v. Siwert, supra.* This standard was based on comments to tentative draft 13 of the Model Penal Code. While this is historically informative, there is no authority for the proposition that comments to a tentative draft[8] or a trial court decision are binding upon our Court. Currently, Section 5508 Comments refer generally to Section 250.8 of the Model Penal Code. Section 205.8, in turn, refers to the "Explanatory Note for Sections 250.1–250.12" which appears "before Section 250.1." *See* Section 205.8 Explanatory Note.

The current Explanatory Note states, in relevant part, "Section 205.8 covers disrupting meetings and processions. This offense is distinct from the general provi-

---

6. *See Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830, 843 (1986).

7. Under McCoy's argument, a person who burned a flag in the Pennsylvania Senate Chamber during a session would not be disturbing a meeting because burning a flag is exercising pure speech and cannot serve as the basis for a conviction under this section.

We believe this interpretation produces an absurd result, and is not a supportable interpretation of the law.

8. *Siwert* was decided in 1977 and there is no explanation why the trial court relied on commentary to a tentative draft.

sion against disorderly conduct in that it reaches some instances of behavior not in itself disorderly but calculated to outrage the sensibilities of the group involved."

Looking at the language of the statute together with the current explanatory note and knowledge that the statute is balancing competing First Amendment rights, we do not believe that the Commonwealth is required to prove a situation fraught with possibilities of imminent violence. Instead, we believe that given the narrow focus of the law, and the fact that the explanatory note refers to actions not in itself disorderly conduct, we may consider a lesser degree of action as violating the statute and supporting a conviction.

█ Viewing the evidence, as cited above, in the light most favorable to the Commonwealth as verdict winner, there is sufficient evidence to support a conviction for disrupting a procession. As noted, McCoy's and Pruitt's actions rose to the level of probable cause to arrest for disorderly conduct. The explanatory note indicates that Section 5508 is designed to prohibit actions that do not necessarily rise to the level of disorderly conduct. McCoy had engaged in conduct that was more than a transitory annoyance to either the participant in the procession, which happened to include the police, and the observers, whose attention was diverted from the funeral procession and which caused observers to react in disgust. Contrary to McCoy's characterization that the police officers left the procession of their own volition, the police officers were legitimately responding to a situation that implicated disorderly conduct. We believe there is sufficient evidence to support the conviction of Section 5508.

Conspiracy is established when the Commonwealth proves the defendant entered into an agreement to commit or aid in the commission of an unlawful act, there was a shared criminal intent, and an overt act was taken in furtherance of the conspiracy. See 18 Pa.C.S. § 903(a)(1); and generally, Commonwealth v. Murphy, 795 A.2d 1025 (Pa.Super.2002).

█ Further,

'The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.' Commonwealth v. Keefer, 338 Pa.Super. 184, 190, 487 A.2d 915, 918 (1985). 'Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent.' Commonwealth v. Sattazahn, 428 Pa.Super. 413, 422, 631 A.2d 597, 602 (1993) [appeal denied, 539 Pa. 270, 652 A.2d 293 (1994) ].].

" 'An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities.' " Commonwealth v. Kennedy, 499 Pa. 389, 395, 453 A.2d 927, 929–930 (1982), quoting Commonwealth v. Strantz, 328 Pa. 33, 43, 195 A. 75, 80 (1937). 'Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.' Commonwealth v. Woodward, 418 Pa.Super. 218, 226, 614 A.2d 239, 243 (1992).

Commonwealth v. Swerdlow, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176–1177 (1994) (internal quotations and additional citations omitted). "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to

the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. McKeever*, 455 Pa.Super. 604, 609, 689 A.2d 272, 274 (1997) (citation omitted.) Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. *Commonwealth v. Soto*, 693 A.2d 226, 229–230 (Pa.Super.1997), *appeal denied*, 550 Pa. 704, 705 A.2d 1308 (1997).

*Commonwealth v. Johnson*, 719 A.2d 778, 784–85 (Pa.Super.1998) (*en banc*).

█ The concerted actions of McCoy and Pruitt, as related above, are sufficient to prove the conspiracy to disrupt the procession. Although Pruitt testified he was only repeating words from a movie he had recently seen and which he found funny, the trial court was under no obligation to accept the explanation. Rather, the trial court believed the actions undertaken by McCoy and Pruitt on the afternoon of June 30, 2011 demonstrated beyond a reasonable doubt the intent of the two to act together to disrupt the procession. McCoy is not entitled to relief on this claim.

█ We do agree with McCoy that there was insufficient evidence to support the conviction of disorderly conduct.[9] In relevant part, Section 5503 states,

(a) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(3) uses obscene language, or makes an obscene gesture

18 Pa.C.S. § 5503(a)(3).

The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S.

§ 5503(a)(3). This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Commonwealth v. Bryner*, 438 Pa.Super. 473, 652 A.2d 909, 912 (1995).

*Commonwealth v. Kelly*, 758 A.2d 1284, 1286 (Pa.Super.2000).

Moreover, the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more that the alleged criminal has the right to operate within its clearly outlined circumference.

*Id.* at 1287.

The trial court stated the conviction of disorderly conduct was based not upon the obscene character of the words, but that McCoy's words and actions were fighting

---

9. McCoy was charged with violating two subsections of Section 5503; Sections 5503(a)(3) and (a)(4). McCoy was acquitted of Section 5503(a)(4), regarding the creation of "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

words, which are not a class of constitutionally protected speech. *See Commonwealth v. Bryner*, 438 Pa.Super. 473, 652 A.2d 909, 912 n. 4 (1995). The trial court's explanation in support of conviction appears more relevant to Section 5503(a)(4) than (a)(3). Section (a)(3), under which McCoy was convicted, addresses only obscene language or gestures and conviction under this section must be the result of such obscene behavior. We have reviewed to official record and must conclude there is no evidence that the chant was intended to appeal to anyone's prurient interest nor did it describe, in a patently offensive way sexual conduct. There was no evidence of obscene language or gestures and therefore we agree with McCoy that her conviction of disorderly conduct must be set aside.

McCoy's final claim is a challenge to the discretionary aspect of her sentence. Because we have vacated a conviction that provided an integral base for her total sentence, we will remand for imposition of a new sentence. Therefore, McCoy's sentencing claim is moot.

Judgment of sentence affirmed in part and vacated in part. This matter is remanded for imposition of new sentence. Sentencing hearing is to be held within 45 days of the return of the official record. Jurisdiction relinquished.

Judgment Entered.

STRASSBURGER, J., files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY STRASSBURGER, J.:

I agree with the Majority that McCoy's disorderly conduct conviction must be set aside. However, because her disrupting meetings and processions conviction is not supported by sufficient evidence, and because the statute is unconstitutional both as applied and on its face, I dissent.

First, an examination of the record reveals that, contrary to the Majority's holding, the Commonwealth failed to offer sufficient evidence that Appellant disrupted a meeting or procession in violation of 18 Pa.C.S. § 5508.[1]

The Majority concludes that the evidence was sufficient because McCoy's conduct was "more than a transitory annoyance to either the participant in the procession, which happened to include police, and the observers, whose attention was diverted from the funeral procession [2] and which caused observers to react in disgust." Majority Opinion at 664 (footnote added). The Majority determines that McCoy's conduct "implicated disorderly conduct," *id.* at 664, rendering her culpable for the officers' decisions to leave the procession to arrest her.

The record does not support the conclusion of the Majority. There is no evidence that there was any threat of violence, tumult, or disorder caused by McCoy's conduct. There is no evidence that McCoy

1. Actually, the Majority's first error was to address McCoy's constitutional questions before determining whether the case could be decided on nonconstitutional grounds. *See, e.g., Commonwealth v. Hull*, 705 A.2d 911, 915 (Pa.Super.1998) (quoting *Commonwealth v. Samuels*, 354 Pa.Super. 128, 511 A.2d 221, 230 (Pa.Super.1986)) ("[A] court is not to rule on the constitutionality of a statute unless it is absolutely necessary to do so in order to decide the issue before it.").

2. Contrary to the Majority's representation, the motorcade at issue here was not a funeral procession. Rather, the vehicles were escorting the body of Deputy Pagerly from the hospital where an autopsy had been conducted to the funeral home. The legal constructs are no different regardless of the type of procession.

directly interfered with the procession. The only disruption of the procession that occurred was caused by the decision of detective John Lackner (Lackner) to arrest McCoy because he was unhappy that she said "fuck" in front of children. *See* N.T., 2/13/2012, at 62–63 ("They could have been saying fuck the president[. They were not arrested] because it was fuck the police. I didn't take personal offense. It was disorderly in the sense they were saying fuck."). Contrary to the Majority's finding, because the officer arrested her without any indication of imminent public tumult, Lackner did not have probable cause to arrest McCoy for disorderly conduct. *See, e.g., Commonwealth v. Fedorek*, 596 Pa. 475, 946 A.2d 93, 100 (Pa.2008) (quoting *Commonwealth v. Hock*, 556 Pa. 409, 728 A.2d 943, 946 (Pa. 1999)) ("[W]hether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

That Lackner voluntarily exited the procession to quiet McCoy, and other officers chose to join him, does not make McCoy guilty of acting with the intent to interrupt a procession. The fact that the attention of members of the public present on the street was distracted by McCoy's conduct is not sufficient to establish that she interrupted the procession. *See Commonwealth v. Weiss*, 340 Pa.Super. 427, 490 A.2d 853, 856 (Pa.Super.1985) ("Vulgar language, however distasteful or offensive to one's sensibilities, does not become a crime because people standing nearby stop, look, and listen.").

Therefore, McCoy's conviction under 18 Pa.C.S. § 5508 should be vacated. Further, because the conduct of McCoy did not constitute violation of that statute, and

the record does not support an inference that she conspired with Pruitt to do any additional acts that would constitute violation of Section 5508, McCoy's conspiracy conviction should also be vacated. *See, e.g., Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456, 464 (Pa.1998) ("It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.") (emphasis added).

Even if the evidence were sufficient to establish that McCoy and Pruitt conspired to disrupt the procession, her conviction on the facts of this case would violate the First Amendment. Criminal statutes "may not be used to punish anyone exercising a protected First Amendment right." *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54, 58 (Pa.1980), *appeal dismissed Mastrangelo v. Pennsylvania*, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980).

> As a general rule, the First Amendment prohibits government interference with an individual's freedom of speech. Only very narrow exceptions, such as obscenity, defamation, and "fighting words," have been carved out of this general guarantee of freedom. **Any speech which does not fit into one of these narrow exceptions is constitutionally protected regardless of how vulgar or lacking in taste or social, political or artistic content. . . . The right to free speech encompasses the freedom to speak foolishly and without moderation.**

*Commonwealth v. Zullinger*, 450 Pa.Super. 533, 676 A.2d 687, 689 (Pa.Super.1996) (emphasis added; internal quotation and citations omitted).

The two exceptions relevant to this appeal are obscenity and fighting words. In overturning McCoy's disorderly conduct conviction, the Majority correctly concludes that her speech and conduct were

not obscene. *See* Majority Opinion at 666. An examination of the relevant case law makes clear that McCoy's speech did not constitute "fighting words" either.

Fighting words are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "[I]n determining whether words constitute fighting words, [t]he circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether [the] words had a direct tendency to cause acts of violence by [others]." *Hock*, 728 A.2d at 946 (quotation and citation omitted) (holding that statement "fuck you, asshole" made to police officer did not constitute fighting words).

For example, in *Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa.Super.2003), this Court found that Reynolds uttered fighting words when he, brandishing a gun in a public place, said "I'll kill you motherfucker." *Id.* at 727. *See also Commonwealth v. Lutes*, 793 A.2d 949, 963 (Pa.Super.2002) (holding that Lutes uttered fighting words when he "twice called the victim a vulgar name and stated he was going to punch the victim in the mouth"); *Commonwealth v. Pringle*, 304 Pa.Super. 67, 450 A.2d 103 (Pa.Super.1982) (holding that repeated shouting of "goddamn fucking pigs" while officers were making an arrest outside a tavern with a crowd of 50 onlookers constituted fighting words). All of these cases involved physical contact or the threat thereof.

By contrast, the Supreme Court held that the defendant did not communicate "fighting words" in *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). In that case, Cohen was charged with various offenses for wearing in a pub-

lic building a jacket bearing the words "Fuck the Draft."

This Court has ... held that the States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called "fighting words," those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction. **While the four-letter word displayed by Cohen in relation to the draft is not uncommonly employed in a personally provocative fashion, in this instance it was clearly not directed to the person of the hearer.** No individual actually or likely to be present could reasonably have regarded the words on appellant's jacket as a direct personal insult. Nor do we have here an instance of the exercise of the State's police power to prevent a speaker from intentionally provoking a given group to hostile reaction. **There is, as noted above, no showing that anyone who saw Cohen was in fact violently aroused or that appellant intended such a result.**

*Id.* at 20–21, 91 S.Ct. 1780 (internal quotations and citations omitted; emphasis added).

In supporting its guilty verdict under Section 5508 in the instant case, the trial court relied upon its erroneous belief that McCoy's speech was unprotected as "fighting words."

The case at bar involved shouting, fighting words and gestures that risked inciting violence among solemn members of the public lining the streets at the procession of a dead deputy killed in the line of duty just the day before. [McCoy] and [Pruitt] actually approached the procession when they left the sidewalks and went into the street while chanting loudly and making "fight-

ing" gestures. [McCoy] came very close to the procession and then went between the vehicles while she was gesturing and shouting. The officers actually had to leave the procession to prevent an outbreak of violence.

Trial Court Opinion, 7/6/2012, at 13. The trial court's determination is in error.

The instant case is far more akin to *Cohen* than it is to *Reynolds* or *Lutes.* McCoy did not threaten anyone. In fact, McCoy did not direct her speech to any of the officers or civilians present. The evidence shows that McCoy and Pruitt caused members of the public to feel silent disgust; however, there is absolutely no indication that anyone present reacted violently or that violence was imminent. Because McCoy's speech did not constitute "fighting words," her speech is protected by the First Amendment and her conviction for violating 18 Pa.C.S. § 5508 cannot stand.

Although the above shows that it is unnecessary to reach McCoy's facial challenge to the constitutionality of Section 5508, the Majority addresses the merits of her arguments that the statute is overbroad and void for vagueness. The Majority reaches an incorrect result on these questions too.

Lackner, among the final seven or eight cars in the procession of 40 to 50 vehicles, noticed McCoy on one side of the street pumping her fist into the air, and Pruitt on the other side swinging a bag above his head. As he got closer, Lackner was able to hear the two yell "fuck the police" five or six times. Lackner initially continued driving in the procession, but decided to turn around and exit the motorcade after he "observed the citizens that appeared to be in disgust." N.T., 2/13/2012, at 52. Lackner immediately took McCoy into custody for disorderly conduct based upon the fact that she repeatedly said the word "fuck" in front of families and children.

*Id.* at 62–63. In addition to witnessing the events Lackner related, Criminal Investigator Darren Smith (Smith) saw McCoy cross the street between vehicles in the motorcade. Smith offered no testimony that McCoy's crossing the street in any way disrupted the procession. Smith drove past McCoy and Pruitt, and only turned around after Lackner radioed "that he wanted to go arrest these individuals for interfering with the procession." *Id.* at 16.

Compare the facts of this case to those of the only published opinion interpreting Section 5508: *Commonwealth v. Siwert,* 4 Pa. D. & C.3d 589, 591 (Northampton County 1977) (*en banc*). In *Siwert,* the defendant was convicted under section 5508 for interrupting a church service for five minutes by asking the minister to address the congregation and arguing with him when he denied the request. *Id.* at 591. The Common Pleas court sitting *en banc* granted Siwert's motion for an arrest of judgment, holding that there was no showing that Siwert's conduct "was inherently disorderly, or presented a clear and present danger to anyone's safety." *Id.* at 595.

So we have one court determining that the interruption of a church service for 5 to 10 minutes by someone arguing with a minister does **not** constitute a punishable disruption, and this Court concluding that McCoy did disrupt a procession by standing on a public sidewalk laughing and shouting "fuck the police" a few times. No one reading the statute and these cases can have any definite idea of what conduct is prohibited. In fact, the trial court itself stated, after reading Section 5508, "I don't understand the language but we yield to the infinite wisdom of the Legislature." N.T., 2/13/2012, at 116.

Further, the very fact that so many officers passed McCoy by and did nothing

until Lackner decided that he needed to protect the tender ears of the children present demonstrates that the statutory language allows for "arbitrary and erratic arrests and convictions." Majority Opinion at 662 (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)).[3] Section 5508 is simply a bad statute and should be held void for vagueness.

Likewise, the statute is unconstitutionally overbroad, as its language encompasses a substantial amount of protected speech. The Majority disagrees, holding that "facially, this statute requires a reasonable balance between protecting the First Amendment rights of those seeking to engage in lawful procession, with the First Amendment rights of those who may be observing or are nearby." Majority Opinion at 663.

Section 5508 provides, in its entirety, "[a] person commits a misdemeanor of the third degree if, with intent to prevent or disrupt a lawful meeting, procession or gathering, he disturbs or interrupts it." 18 Pa.C.S. § 5508. There is absolutely nothing on the face of this statute that remotely suggests a balancing of First Amendment rights.

The *Siwert* court chose to interpret the statute to prohibit only disruptions that are "inherently disorderly, or present[ ] a clear and present danger to anyone's safety," *Siwert, supra* at 595. The Majority expressly rejected this limitation of its scope to speech outside of the protection of the First Amendment. *See* Majority Opinion at 669–70. Instead, relying upon an explanatory note from the Model Penal Code, the Majority holds that Section 5508 has a "narrow focus" on conduct that would be insufficient to sustain a disorderly conduct conviction, but is " 'calculated to outrage the sensibilities of the group involved.' " *Id.* at 664 (quoting Model Penal Code Explanatory Note for Sections 250.1–250.12).

First, Section 5508 contains different language than that of the Model Penal Code. "Under the Model Penal Code approach, 'offensive utterance,' utterances, gestures or displays 'designed to outrage the sensibilities' of the participants at the disrupted gathering are also criminalized. Such an approach creates obvious questions of constitutionality under the First Amendment, and was not adopted in the Pennsylvania Crimes Code." 14 West's Pa. Practice, Criminal Offenses and Defenses § 1:471 (6th ed.2010).

Although our Legislature attempted to use less obviously-unconstitutional language than that of the Model Penal Code, it did not go far enough to tailor the statute to exclude protected speech. If, as the Majority holds, the Commonwealth can punish someone under Section 5508 because people at a meeting or procession may suffer outraged sensibilities, the statute enacts an impermissible heckler's veto. " '[C]onstitutional rights may not be denied simply because of hostility to their assertion or exercise.' " *Cox v. Louisiana*, 379 U.S. 536, 551, 85 S.Ct. 466, 13 L.Ed.2d 487 (1965) (quoting *Watson v. City of Memphis*, 373 U.S. 526, 535, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963)) *See also Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 879 (7th Cir.2011) ("Statements

---

**3.** The Majority cites the fact that there are only two cases annotated to Section 5508 since its enactment in 1972 as evidence that there have been no "problems with encouraging arbitrary arrests or convictions." Majority Opinion at 662 n. 5. I do not find the dearth of case law instructive, as minimal penalties attach to violation of the statute, and therefore we have no idea how many pleas there have been or convictions without appeal.

that while not fighting words are met by violence or threats or other unprivileged retaliatory conduct by persons offended by them cannot lawfully be suppressed because of that conduct.").

[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech ... is ... protected against censorship or punishment.... There is no room under our Constitution for a more restrictive view.

*Cox,* 379 U.S. at 552, 85 S.Ct. 466 (internal quotation omitted) (holding unconstitutionally vague and overbroad a statute that punished a breach of the peace, which was defined as "to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet"). Section 5508 is unconstitutionally overbroad.

In sum, McCoy is guilty of engaging in conduct that was "vulgar [and] lacking in taste," and choosing "to speak foolishly and without moderation." *Zullinger,* 676 A.2d at 689. However, McCoy is not guilty of violating any constitutionally-valid criminal statute. Therefore, I most vigorously dissent.

Judgment Entered.