J. S12010/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MARIA BURNS, : No. 3499 EDA 2012
:
Appellant :

Appeal from the Judgment of Sentence, November 14, 2012,
in the Court of Common Pleas of Northampton County
Criminal Division at No. CP-48-SA-0000228-2012

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:**FILED DECEMBER 03, 2014**

Appellant, Maria Burns, appeals from the judgment of sentence

entered in the Court of Common Pleas of Northampton County following her

conviction for disorderly conduct. We affim.[1]

Appellant was charged by the Moore Township Police Department with

two separate incidents of disorderly conduct; the first incident occurred on

June 13, 2012, at the Moore Township recreational park. According to the

testimony of Sydney Wright ("Wright"), age 14, she and appellant's son,

Anthony, and another boy, Brandon Green, were riding their bicycles on the

trails. (Notes of testimony, 11/14/12 at 4-5.) Wright received a call on her

---

[1] On April 8, 2014, in a memorandum decision, we remanded this case to the trial court for appellant's court-appointed counsel to file a Pa.R.A.P. 1925(b) statement and the trial court to prepare and file its Pa.R.A.P. 1925(a) opinion. The case is now ready for our review.

cell phone from Brandon's mother, Dana Green, asking the group to come back to the park. (*Id.* at 5.) Upon their return, Wright testified that appellant was there and "everything was normal." (*Id.* at 6.) Appellant went back to her house to get Anthony a pair of shoes and Gatorade. (*Id.*) When appellant returned a half-hour later, Wright said appellant was acting "differently" and "mumbling under her breath." (*Id.*) Wright was playing with Dana Green's two-year-old son when appellant, standing three feet away from Wright, started talking about how she thought Wright was a foreign exchange student from Germany. (*Id.* at 6-7.) Wright testified she did not understand what appellant was saying because "it didn't make much sense to me" and then appellant "called us the N word and white trash." (*Id.* at 7.) When asked how she felt when appellant approached her, Wright said, "I felt intimidated and just nervous." (*Id.* at 9.) When asked how many times appellant used the "N word," Wright answered, "I only heard it once." (*Id.* at 11.) When asked if appellant referred to only Wright as white trash, Wright responded, "I don't know if it was meant for me, but she said it to the group of us." (*Id.*) Dana Green also testified that appellant used the "N word" one time. (*Id.* at 18.) The police were called and appellant was issued a citation for disorderly conduct, 18 Pa.C.S.A. § 5503(a)(1), (2), (3) & (4) at Citation No. P 8605386-6.[2]

---

[2] We note that the citation lists "sub. sec. A(1), (2), (4)" on one line. Directly above, under Crimes Code Title 18, "(A3)" is listed. The original citation is attached to Document # 2 in the certified record.

The second incident occurred on July 10, 2012. Colleen Greene, ("Greene"), testified that appellant's house is next door to her house, and there are about 100 feet between the properties. (Notes of testimony, 11/14/12 at 28.) According to Greene, she had just returned to her home after going to lunch and grocery shopping. (*Id.* at 29) Appellant, while standing on her own driveway, started yelling and calling Greene names; such as, "you are white trash, you're mother F-ing white trash, controlling jerk." (*Id.* at 30.) Greene testified this has happened before; and on this particular day, appellant just kept saying, "you're white trash, you're white trash." (*Id.* at 31.) Greene testified no one else was present during this incident. (*Id.* at 34.) She called the police and appellant was cited for disorderly conduct, 18 Pa.C.S.A. § 5503(a)(2), (3) & (4) at Citation No. P 9256315-5.

A hearing was held on August 1, 2012, before District Magistrate Robert A. Hawke on both citations. The certified record indicates that appellant was found guilty of disorderly conduct at both citations and fined $339 for each citation for a total of $678. Appellant filed a timely appeal to the Court of Common Pleas of Northampton County on August 30, 2012. Both summary convictions were consolidated for a non-jury trial *de novo* that took place on November 14, 2012.

On November 14th, at the close of testimony, Attorney Paul J. Levy, counsel for appellant, made an oral motion for a demurrer regarding the

second incident appellant was cited for on July 10, 2012.  The trial court sustained counsel's motion.  (Notes of testimony, 11/14/12 at 34.)  The trial court then went on to find appellant guilty in connection with the first incident on June 13, 2012.  The trial court stated:

> The Court will find the defendant, after a de novo hearing, guilty of violating section 5503 of the Crimes Code, **subsections two, three, and four**.  The Court will impose a fine upon her identical to that imposed upon her earlier at $339, plus the additional costs associated with the Northampton County proceedings.

*Id.* at 35-36 (emphasis added).

A timely appeal to this court followed, and appellant presents the following issues for our review:

> 1. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?
>
> 2. WHETHER THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE?
>
> 3. WHETHER THE CONDUCT OF [APPELLANT] UNDERLYING THE CRIMINAL CONVICTION CONSTITUTED FREE SPEECH PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION?

Appellant's brief at 4.[3]

Section 5503(a) defines disorderly conduct as follows:

---

[3] A fourth issue listed in appellant's statement of questions involved has been abandoned.

**§ 5503.  Disorderly conduct**

**(a)  Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1)  engages in fighting or threatening, or in violent or tumultuous behavior;

(2)  makes unreasonable noise;

(3)  uses obscene language, or makes an obscene gesture; or

(4)  creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A.§ 5503.  Specifically, our supreme court has held that an individual may be convicted for disorderly conduct "when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only one other person."

***Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008).

Before proceeding, we must address the unclear nature of exactly which sections appellant was charged with and convicted of.  The only matter before us is the first citation regarding the June 13, 2012 incident.  The original citation found in the certified record charges appellant with a violation of Section 5503(a)(1), (2), (3), and (4).  The nature of the offense is described as follows:

> Defendant caused public inconvenience annoyance and alarm; to wit she began yelling at the victim (15 years old) in a loud tone and screaming at other children and adults in the rec. center. Defendant's actions had no meaning toward the victim which served no legitimate purpose.

Citation No. P 8605386-6, received 6/18/12, District Court 03-3-01 (attached to Document #2).

As already noted at the conclusion of the November 14, 2012 *de novo* trial, the trial court found appellant guilty of Section 5503(a)(2), (3), and (4). However, the trial court's Rule 1925(a) opinion indicates the issues in this case concern Subsections (a)(1), (2), and (4). (Trial court opinion, 7/7/14 at 1, 3.)

By letter dated October 3, 2014, the Commonwealth advised this court that it concedes there was insufficient evidence presented at trial to sustain appellant's conviction under Section 5503(a)(3).[4] However, the Commonwealth notes appellant was convicted under two other sections, Sections 5503(a)(2) and (a)(4), and that appellant has not challenged those convictions on appeal. We have reviewed appellant's brief, and the Commonwealth is correct that appellant only addresses the evidence as it relates to Section 5503(a)(3). Specifically, appellant argues that the trial

---

[4] We agree with the Commonwealth that there was insufficient evidence to convict appellant under Section 5503(a)(3). There was no evidence that appellant's words were intended to appeal to anyone's prurient interest or described sexual conduct in a patently offensive way. *See Commonwealth v. McCoy*, 69 A.3d 658, 665 (Pa.Super. 2013), *appeal denied*, 83 A.3d 414 (Pa. 2014).

court confuses the two incident dates since Section 5503(a)(3) was charged in the July 10th incident which was dismissed. To the extent that appellant argues sufficiency under Section 5503 generally, or as to Sections 5503(a)(2) and (4), we find the trial court's opinion amply supports a finding of sufficiency with respect to these two sections, and we affirm on that opinion.

Appellant has filed an application for relief to include copies of both the June 13, 2012 and July 10, 2012 citations. Our review indicates the original citation regarding the June 13, 2012 incident is already included in the certified record. Based on our review and discussion in this Memorandum, the supplementation of the record is not necessary. Accordingly, the motion is denied.

Judgment of sentence affirmed.

Donohue, J. joins the Memorandum.

Jenkins, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2014

- 7 -

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :

           Vs.                : No. 48-SA-228-2012

MARIA BURNS,            :

       Appellant.        :

### Pa.R.A.P. 1925(a) Statement

AND NOW, this 2 day of July, 2014, the Court issues the following statement:

### A. Procedural History

On June 13, 2012, the Appellant, Maria Burns, was issued a non-traffic citation at no. 8605386-6 for disorderly conduct under 18 Pa.C.S. §§ 5503(a)(1), (2), & (4). The citation charges the Appellant with causing public inconvenience, annoyance, and alarm by yelling at the Victim (age 14) in a loud tone and screaming at other children and adults in a recreational center. It further alleges that the Appellant's actions had no meaning or legitimate purpose.

On July 9, 2012, the Appellant received a second citation for disorderly conduct at no. 9256315-5. This citation charges the Appellant with causing public inconvenience, annoyance, and alarm by yelling and cursing at her neighbor without justification.

1

The Appellant represented herself at the summary proceeding before Magisterial District Judge Robert Hawke. MDJ Hawke found her guilty of both offenses. The Appellant then appealed her convictions to the Court of Common Pleas, this time with the assistance of counsel, Paul Levy, Esquire.

The undersigned heard the summary appeal on November 14, 2012. The Court found the Appellant guilty of disorderly conduct on the June 13, 2012 citation but not guilty on the July 9, 2012 citation.

The Appellant filed a timely notice of appeal on December 14, 2012. At this point, we incorporate the procedural history from our Pa.R.A.P. 1931(b) Statement dated June 20, 2013.

On remand from the Superior Court, we appointed Brian Monahan, Esquire, to represent the Appellant on April 11, 2014. We directed Attorney Monahan to file a statement pursuant to Pa.R.A.P. 1925(b). We later granted his request for additional time due to the unavailability of the trial transcript.

B. The Appellate Issues

Attorney Monahan submitted his 1925(b) statement on May 29, 2014, raising the following issues:

(1) The verdict was against the weight of the evidence;

(2) The verdict was against the sufficiency of the evidence;

(3) The conduct of Defendant underlying the criminal conviction constituted free speech protected by the First Amendment of the United States Constitution; and

2

(4) The Court erred in allowing testimony to support the conviction which related to a different offense.

## C. Discussion

We begin our discussion with the Appellant's challenge to the sufficiency of the evidence. The test for the sufficiency of the evidence is whether, accepting as true all the evidence, including all reasonable inferences drawn therefrom, the evidence and inferences are sufficient to prove guilt beyond a reasonable doubt.[1]

The summary offense of "Disorderly Conduct" is governed by 18 Pa.C.S. § 5503(a), which provides that "A person is guilty of disorderly conduct if, within the intent to cause public inconvenience, annoyance or alarm, or reckless creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

At issue in this case are subsections (a)(1), (2), and (4).

During the hearing, the Commonwealth presented two witnesses in support of the June 13, 2012 citation. The first witness to testify was the Victim, age 14.

---

[1] See *Commonwealth v. Mastrangelo*, 414 A.2d 54, 59 (Pa. 1980)

3

The Victim testified that, on June 14, 2012,[2] she rode her bike to the Moore Township Recreational Park with the Appellant's son and Dana Green's son. The trio rode their bikes until Dana Green called the Victim and her son and asked them to return. The children complied with this request and returned to the park.

Upon their return, everything was "normal." The Appellant was present and "standing around." At some point, however, she left the park to retrieve a pair of shoes and a bottle of Gatorade. When the Appellant returned about 30 minutes later, she seemed "different."

The Victim saw her walking back and forth and mumbling under her breath. Initially, she did not think much of it. However, the Victim became frightened when the Appellant approached to within three feet of her and began to accuse her of being a foreign exchange student from Germany.

The Victim, who was not a foreign exchange student, did not understand what the Appellant was saying. The Appellant insisted that she was. Her voice grew progressively louder until she was shouting at the Victim. She warned the Victim not to ". . . get her family involved."

The Appellant called the Victim "N-I-G-G-E-R" and "white trash." At this point, the Appellant's son got upset and rode off into the woods. Dana Green and an adult named Sarah gathered the remaining children and retreated to the park's

---

[2] We note the discrepancy between the trial testimony and the citation date. However, this technicality was not raised at trial and is not at issue on appeal.

4

baseball fields. Sarah then called the police. The Appellant drove away but was stopped by the police.

The Victim felt intimidated and nervous when the Appellant had approached her. She believed the Appellant might hit her. The Appellant yelled in an erratic, high-pitched tone. She did not threaten any physical violence, however.

The second witness to testify was Dana Green. She testified that, on June 13, 2012, her oldest son was at the Moore Township recreational center with the Appellant's son and the Victim. This had upset the Appellant because she did not want her son to "meander" in the woods with a girl.

Consequently, Dana Green called the Victim and her son and asked them to return, which they did. The Appellant and her son then talked for a bit. After that, the Appellant left the park to get shoes and a drink.

The Appellant had a different demeanor upon her return. She was agitated and "rustling around." She was mumbling to herself and moving back and forth.

Dana Green was in the pavilion with her three-year old child when the Appellant began to speak to the Victim about being in a foreign exchange program. This conversation escalated. Neither Dana Green nor the Victim understood what the Appellant was saying.

Dana Green asked the Appellant to stop. The Appellant replied that Dana Green should not question her. Her voice rose as she exclaimed that the Victim

5

"knew exactly what she was talking about and if she didn't, she would question [the Victim's] mother about that."

The conversation continued to escalate. The Appellant cursed at Dana Green and called her an "N-I-G-G-E-R" and "white trash." Dana Green wanted to get out of there. In her view, the conversation had escalated to the point where it was no longer safe.

The police were then called. Dana Green moved her children to the other side of the park where it was safe.

The Appellant testified in her defense. She stated that she was not remorseful, and felt that she had a right to question the Victim. She believed the other adults' behavior on the date in question was indicative of "white trash." The Appellant did not like her children to have a "free for all" running through the woods.

The Appellant acknowledged that she had recently been treated by a neurosurgeon for issues with her brain. She had undergone 18 months of periodic CAT scans in an attempt to identify the source of her unexplainable bleeding. The Appellant did not assert the defense of mental incompetence in this case, however.

The Court found the Appellant guilty of the June 13, 2012 citation under all three subsections. We submit that there was sufficient evidence for this verdict. In support, we note the uncontroverted testimony that the Appellant initiated an unprovoked and profanity-laced confrontation with a 14-year-old girl. The intensity

of this irrational conflict escalated to where the other adults felt the need to remove themselves from the Appellant's vicinity and contact the police.

The Victim testified that the Appellant had approached to within three feet of her with an increasingly hostile barrage of offensive language. The Victim feared that the Appellant might strike her. The Appellant had screamed nonsensical ramblings in a high-pitched tone, and refused to halt her tirade when asked. The Appellant's loss of self-control affected everyone around her, including her son.

We submit that this unprovoked display of unremitting hostility toward a child is sufficient to sustain the Appellant's conviction for disorderly conduct.[3]

We turn now to the Appellant's challenge to the weight of the evidence. We employ the following standard of review:

> A motion for a new trial on the ground that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in this light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'[4]

---

[3] See Commonwealth v. Mastrangelo, 414 A.2d 54 (Pa. 1980).
[4] Commonwealth v. Widmer, 744 A.2d 745, 751-752 (Pa. 2000) (internal citations omitted).

In our view, there are no facts of record that compel a new trial. For whatever reason, the Appellant appears to have undergone a mental or emotional shift that caused her to become hostile and abusive. This personality change may be attributable to the brain issue for which she received medical treatment. However, a brain abnormality (even if proven) would not give the Appellant a license to berate others, especially children, with impunity.

Moreover, the Appellant did not raise this defense at trial. Rather, Attorney Levy argued that the Appellant had a "legitimate purpose" for addressing the Victim with racial epithets like "white trash" and "N-I-G-G-E-R." We do not agree.

In our view, no civilized society should condone this type of unprovoked and abusive behavior from an adult toward a child. Accordingly, we submit that the verdict was not contrary to the weight of the evidence.

Next, we address the Appellant' contention that her conduct was protected by the First Amendment to the United States Constitution. The U.S. Supreme Court has explained the limitations on the right to free speech as follows:

> Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and *the insulting or 'fighting' words those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.* It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived

from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any sense proper communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.[5] (emphasis added).

We submit that the Appellant's speech falls into the unprotected category of 'fighting words.' In support, we note that neither Dana Green nor the Victim understood what the Appellant was saying. Because the Victim was not a foreign exchange student, the Appellant's attempt to interrogate her on this topic was meaningless.

The Appellant peppered her invective with racial epithets and used a hostile tone to press her attack. She was not engaged in a meaningful dialogue or symbolic speech. In our view, her speech was devoid of any "social value as a step to truth." We therefore submit that her actions are not subject to protection by the First Amendment.

Finally, we address the Appellant's claim that the Court erred in using testimony from a different offense to support this conviction. The Appellant is referring to the testimony of Colleen Green, the Appellant's neighbor, offered by the Commonwealth in support of the July 9, 2012 citation.

Colleen Green testified that the Appellant had berated her on a daily basis for over a year without any apparent cause. The Appellant alternately referred to

---

[5] *Commonwealth v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572 (1942)).

9

her (and her other neighbor) as "F-ing white trash," "controlling jerk," "whore," and "prostitute." Ultimately, the Court dismissed the July 9, 2012 citation for lack of testimony that this behavior had taken place in a public location.

To start, we note the presumption "that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence."[6] In addition, we submit that there is no indication that the Court used Colleen Green's testimony to support its verdict on the June 13, 2012 citation. Instead, as set forth above, we believe the evidence was sufficient to sustain the Court's guilty verdict independent of Colleen Green's testimony. We therefore submit that this final assertion of error is meritless.

We respectfully request that the judgment be affirmed in all respects.

By the Court:

Leonard N. Zito, S. J.

---

[6] *Commonwealth v. Fears*, 86 A.3d 795, 820 (Pa. 2014) (internal citation omitted).

10